160

Wayne E. Petkovic, for appellant.

THE STATE EX REL. DISPATCH PRINTING COMPANY
ET AL. *v.* JOHNSON, DIR., ET AL.

[Cite as *State ex rel. Dispatch Printing Co. v. Johnson,*
106 Ohio St.3d 160, 2005-Ohio-4384.]

(No. 2004–0394—Submitted May 10, 2005—Decided September 7, 2005.)

ALICE ROBIE RESNICK, J.

{¶ 1} In this case, we determine whether state-employee home addresses are public records for purposes of the Public Records Act. For the reasons specified, we hold that in general, state-employee home addresses are not "records" under R.C. 149.011(G) and 149.43 because they do not document the organization, functions, policies, decisions, procedures, operations, or other activities of the state and its agencies. Consequently, state-employee home addresses are not subject to disclosure under the Public Records Act, and the Dispatch is not entitled to a writ of mandamus to compel disclosure of the addresses.

{¶ 2} Relator the Dispatch Printing Company publishes the Columbus Dispatch, a daily newspaper, and relator Alan W. Johnson is a Dispatch reporter

(collectively referred to as "Dispatch"). Respondent, Ohio Department of Administrative Services ("DAS"), maintains an electronic database of payroll records for state employees and an electronic file to facilitate the distribution of W–2 forms to state employees. The payroll records identify a state employee's name, employment address, residential address, position, and salary. Each W–2 electronic file contains the names, residential addresses, and salaries of state employees.

{¶ 3} From 1992 to 2002, upon request, DAS provided the Dispatch with copies of a computerized file of state-employee payroll records, which included state-employee home addresses. DAS did not redact the home addresses from the records provided to the Dispatch.

{¶ 4} In April or May 2003 and on November 10, 2003, the Dispatch requested that DAS provide it with "payroll records for all state employees, including names, addresses, job and agency titles and all pay fields."

{¶ 5} On December 18, 2003, the Dispatch requested that DAS provide it with a copy of the electronic file used to distribute the 2002 W–2 forms to state employees. On January 30, 2004, the Dispatch requested that DAS provide a copy of the electronic file used to distribute the 2003 W–2 forms to state employees. In each of these two requests, the Dispatch specified, "In the event information other than the names, residential addresses and salaries of state employees appears within this file, we have no objection, for purposes of this request, to the redaction of this information."

{¶ 6} DAS refused the Dispatch's requests for payroll and W–2 records.

{¶ 7} On April 12, 2004, the Dispatch requested that DAS and the various other state-agency respondents [1] provide it with copies of documents, mailing lists, rosters, and payroll information containing current employees' home addresses. The Dispatch requested that the records be provided in electronic format insofar as they were kept in that format. Respondents refused to release these records. On April 14, 2004, the Dispatch again requested that DAS provide copies of the W–2 records.

---

1. These state-agency respondents are the Adjutant General's Department, Department of Aging, Department of Agriculture, Department of Alcohol and Drug Addiction Services, Office of Budget and Management, Department of Commerce, Office of Criminal Justice Services, Department of Development, Environmental Protection Agency, Department of Health, Department of Insurance, Department of Job and Family Services, Lottery Commission, Department of Mental Health, Department of Mental Retardation and Developmental Disabilities, Department of Public Safety, Department of Natural Resources, Department of Rehabilitation and Correction, Department of Taxation, Department of Transportation, Bureau of Workers' Compensation, and Department of Youth Services.

{¶ 8} In May 2004, the Dispatch requested that the state-agency respondents give it copies of biweekly payroll reports provided by DAS from January 1 through January 31, 2004, biweekly reports provided to AFSCME or any other union or collective bargaining unit during January 2004, and biweekly nongovernmental vendor reports provided to any nongovernmental vendor in January 2004. Again, the Dispatch requested these records in electronic format if the state agencies kept the records in that format. The state agencies refused to release these records.

{¶ 9} In responding to the Dispatch's requests, the state initially took the position that state-employee home addresses are not records under the Public Records Act. Ultimately, however, the state notified the agencies of the Dispatch's requests and asked that each agency determine which employees' home addresses should be exempted from disclosure to the Dispatch based upon the peace officer, firefighter, or emergency medical technician ("EMT") residential-and-familial-information exception and the constitutional right of privacy.

{¶ 10} On March 3, 2004, the Dispatch filed this action for a writ of mandamus against DAS and its director. On June 11, 2004, with leave of the respondents named in the original complaint, the Dispatch filed an amended complaint. The Dispatch seeks a writ of mandamus to compel respondents to produce the requested records immediately and to produce public records in the future without delay.

{¶ 11} On June 28, 2004, respondents DAS and its director moved to dismiss the amended complaint. On July 13, 2004, the remaining respondents moved to dismiss the amended complaint by incorporating the motion of respondents DAS and its director to dismiss. On August 27, 2004, we denied respondents' motions to dismiss, granted the motions of Ohio Civil Service Employees Association, AFSCME Local 11, AFL–CIO ("OCSEA"), and Ohio Education Association ("OEA"), unions representing many state employees, to intervene as additional respondents, granted an alternative writ, and issued a schedule for the presentation of evidence and briefs. *State ex rel. Dispatch Printing Co. v. Johnson*, 103 Ohio St.3d 1422, 2004-Ohio-4510, 814 N.E.2d 487. On October 1, 2004, we denied the motion of DAS, its director, and the state-agency respondents for a protective order and extended the schedule for evidence and briefs. *State ex rel. Dispatch Printing Co. v. Johnson*, 103 Ohio St.3d 1470, 2004-Ohio-5315, 815 N.E.2d 1122.

{¶ 12} The parties filed extensive evidence on November 1, 2004. The evidence established that around August 24, 2004, the state-agency respondents provided the Dispatch with the home addresses of approximately 1,700 state employees from 39 state entities. In late October 2004, the state-agency respondents provided the Dispatch with home addresses of state employees from 42 additional state entities. According to the state-agency respondents, DAS and all

of the state-agency respondents other than the Department of Rehabilitation and Correction ("DRC") and the Department of Mental Health ("DMH") provided the home addresses of 44,376 state employees and withheld the home addresses of only (1) 2,938 peace officers, EMTs, and firefighters and (2) 300 employees who fear that disclosure of their home addresses will jeopardize their families' safety. DRC provided the Dispatch with the home addresses of 121 of its employees and withheld the home addresses of 14,274 of its employees on the basis that these employees would face a substantial risk of serious bodily harm if their residential addresses were disclosed. DMH provided the Dispatch with the home addresses of all of its employees except for (1) 117 peace officers, (2) three firefighters, (3) three EMTs, and (4) 1,705 employees who would face a substantial risk of serious bodily harm from the disclosure of these addresses.

{¶ 13} The parties filed their briefs, and the National Fraternal Order of Police, Cleveland Municipal Court, and city of Cleveland filed amicus curiae briefs in support of respondents. Briefing was completed on January 24, 2005.

{¶ 14} On March 16, 2005, the court sua sponte granted oral argument, which was conducted on May 10, 2005.

### Mandamus: General Standards in Public–Records Cases

{¶ 15} The Dispatch contends that a writ of mandamus should issue compelling the state agencies to release the state-employee residential addresses they have withheld and that a writ of mandamus should be granted to address the state agencies' unreasonable delay in responding to the Dispatch's records requests.

{¶ 16} Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act. *State ex rel. Beacon Journal Publishing Co. v. Akron,* 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 23. In analyzing a public-records mandamus claim, " 'R.C. 149.43 [the Public Records Act] is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records.' " (Brackets sic.) *Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 7, quoting *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 376, 662 N.E.2d 334.

### Mandamus: R.C. 149.43 and 149.011(G): Records

{¶ 17} DRC, DMH, OCSEA, OEA, and amici curiae all assert that the Dispatch is not entitled to the requested state-employee home addresses because they are not records for purposes of R.C. 149.43. R.C. 149.43(A)(1) provides: " 'Public record' means records kept by any public office, including, but not limited to, state [offices]." It is uncontroverted that the state-agency respondents are public offices. See R.C. 149.011(A) (" 'Public office' includes any state agency") and (B) (" 'State agency' includes every department, bureau, board,

commission, office, or other organized body established by the constitution and laws of this state for the exercise of any function of state government").

{¶ 18} At issue is whether state-employee home addresses are records. R.C. 149.011(G) defines "records" for purposes of the Public Records Act to include "any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."

{¶ 19} Therefore, in order to establish that state-employee home addresses are records for purposes of R.C. 149.011(G) and 149.43, the Dispatch must prove that home addresses are (1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of the state agencies, (3) which serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office. If the Dispatch fails to prove any of these three requirements, it will not be entitled to a writ of mandamus to compel access to the requested state-employee home addresses because those records are not subject to disclosure under the Public Records Act.

{¶ 20} State-employee home addresses satisfy the first two requirements of this three-part test for "records" under R.C. 149.011(G): home addresses are (1) items (2) received by state agencies from their employees.

{¶ 21} Therefore, whether state-employee home addresses are records depends upon whether these addresses meet the final requirement specified in R.C. 149.011(G), which is that they "serve[ ] to document the organization, functions, policies, decisions, procedures, operations, or other activities" of the state agencies. Our paramount concern in construing statutes is legislative intent. *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. "In discerning this intent, we read words and phrases in context according to the rules of grammar and common usage." *State ex rel. Lee v. Karnes,* 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23, citing R.C. 1.42. "If the statute is unambiguous, we must apply it as written." Id.

{¶ 22} Applying the rules of grammar and common usage to R.C. 149.011(G), we determine that the Dispatch must establish that state-employee home addresses create a written record of the structure, duties, general management principles, agency determinations, specific methods, processes, or other acts of the state agencies.

{¶ 23} The Dispatch relies on evidence that state agencies ask that employees provide home addresses and that these addresses be updated when employees move. State agencies at times send paychecks and certain correspondence to

their employees at their home addresses. State-employee home addresses are contained on paycheck stubs and personnel-action forms. State agencies also provide state-employee unions and vendors, such as certain health-insurance companies and charities, with records that include state-employee home addresses. In addition, state-employee home addresses are included in W–2 forms provided to federal and state governments.

{¶ 24} According to the deposition testimony of a DAS representative, residential addresses contained in state-agency records are needed and used as part of DAS operations.

{¶ 25} None of this evidence, however, establishes that state-employee home addresses "document the organization, functions, policies, decisions, procedures, operations, or other activities" of the state agencies within the meaning of R.C. 149.011(G). At best, home addresses represent contact information used as a matter of administrative convenience. See, for example, Exhibit A of evidence filed by respondent OEA, in which Judith L. French, then Chief Legal Counsel to Governor Bob Taft, responded to a Dispatch request for state-employee home addresses by stating that they do not constitute records and that a list containing these addresses instead "serves an administrative function and allows cost-effective communication to state employees on matters of common concern."

{¶ 26} Certainly, any state-agency policy requiring that its employees provide and update their home addresses would document a policy and procedure of a public office, but the home addresses themselves would not do so. As amici curiae city of Cleveland and the Cleveland Municipal Court cogently observe, home addresses generally document the places to which state employees return *after* they have performed the work comprising the "organization, functions, policies, decisions, procedures, operations, or other activities" of their state agencies. That is, as DRC and DMH argue, "state employees did not agree to become a readily available source for media reports or corroboration of newspaper stories when they became public servants."

{¶ 27} This conclusion is consistent with the purpose of the Public Records Act, "which is to expose government activity to public scrutiny." *State ex rel. Cincinnati Enquirer v. Winkler*, 101 Ohio St.3d 382, 2004-Ohio-1581, 805 N.E.2d 1094, ¶ 5; *State ex rel. WHIO–TV–7 v. Lowe* (1997), 77 Ohio St.3d 350, 355, 673 N.E.2d 1360. Disclosure of the home addresses of state employees "would reveal little or nothing about the employing agencies or their activities." *United States Dept. of Defense v. Fed. Labor Relations Auth.* (1994), 510 U.S. 487, 497, 114 S.Ct. 1006, 127 L.Ed.2d 325 (denying a request under federal law for home addresses of federal agency employees based on federal privacy statutes). "Inherent in Ohio's Public Records Law is the public's right to monitor the conduct of government." *State ex rel. McCleary v. Roberts* (2000), 88 Ohio St.3d 365, 369,

725 N.E.2d 1144 (personal information—including children's names and addresses kept by city recreation and parks department regarding children who used city's recreational facilities did not constitute public records for purposes of R.C. 149.43); *State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180 (juror names and addresses and juror questionnaire responses are not records under R.C. 149.43). As with the requested records in *McCleary* and *Bond*, disclosure of state-employee home addresses would not further the purposes of R.C. 149.43—i.e., disclosure would not help to monitor the conduct of state government.

{¶ 28} This conclusion further comports with the holdings of two Ohio appellate courts and a United States Court of Appeals. See *State ex rel. Jones v. Summit Cty. Children Serv. Bd.* (Jan. 24, 2001), Summit App. No. 19915, 2001 WL 96048, * 4 ("Inasmuch as the home addresses of the employees do not document the activities of [the county children services board], nor further the public's knowledge of the internal workings of [the board], they do not meet the definition of 'public records' "); *Miami Valley Child Dev. Ctr., Inc. v. Dist. 925/Serv. Emp. Internatl. Union/AFL–CIOM, CLC* (Feb. 22, 2002), Montgomery App. No. 18928, 2002 WL 253637, * 10 ("Certain [public] employee information might be pertinent to an entity's activities or inner workings. However, we see no possible relevance of the employees' home addresses. Therefore, we agree * * * that the home addresses of employees are not 'records,' as defined by the statute"); *Am. Fedn. of Govt. Emp., AFL–CIO, Local 1923 v. United States Dept. of Health & Human Serv.* (C.A.4, 1983), 712 F.2d 931 (list of home addresses of federal agency employees is not an agency record under the Freedom of Information Act because addresses have nothing to do with agency's work and would shed no light on agency's inner workings); see, generally, What Are "Records" of Agency Which Must Be Made Available Under Freedom of Information Act (5 U.S.C.A. § 552(a)(3)) (1999), 153 ALR Fed. 571, Section 2 ("While names and addresses have been held to be agency records in some circumstances * * *, several courts determined that names and addresses were not agency records").

{¶ 29} The Dispatch nevertheless contends that because the requested home addresses are contained in documents that are manifestly records, e.g., W–2 forms, biweekly payroll reports, and personnel files, the addresses contained in these records are also records. But simply because an item is received and kept by a public office does not transform it into a record under R.C. 149.011(G). "[N]ot all items in a personnel file [or other generally public record] may be considered public records." *State ex rel. Fant v. Enright* (1993), 66 Ohio St.3d 186, 188, 610 N.E.2d 997. "To the extent that an item does not serve to document the activities of a public office, it is not a public record and need not be disclosed." *Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 9. If the converse were true, the General Assembly would not have included the require-

ment in the R.C. 149.011(G) definition of "records" that the document, device, or item in question "document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." The court cannot delete this statutory prerequisite. *Lee,* 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 25, quoting *State v. Hughes* (1999), 86 Ohio St.3d 424, 427, 715 N.E.2d 540 (" 'In construing a statute, we may not add or delete words' ").

{¶ 30} The Dispatch further asserts that the state-employee home addresses are records under R.C. 149.011(G) and 149.43 because of our decisions in *State ex rel. Public Emp. Retirees, Inc. v. Public Emp. Retirement Sys.* (1979), 60 Ohio St.2d 93, 14 O.O.3d 331, 397 N.E.2d 1191, and *Police & Fire Retirees of Ohio, Inc. v. Police & Firemen's Disability & Pension Fund* (1985), 18 Ohio St.3d 231, 18 OBR 289, 480 N.E.2d 482.

{¶ 31} In *Public Emp. Retirees,* this court granted a writ of mandamus to compel the Public Employees Retirement System of Ohio to provide access to a list of names and home addresses of member retirees. In that case, we determined that a statute did not exempt the list from disclosure under R.C. 149.43.

{¶ 32} In *Police & Fire Retirees,* this court relied on *Public Emp. Retirees* to grant a writ of mandamus to compel the Police and Firemen's Disability and Pension Fund to provide access to names and home addresses of the fund's members. See, also, *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland* (1992), 82 Ohio App.3d 202, 213, 611 N.E.2d 838 (home addresses and telephone numbers of police officers held to be public records in a case decided before the enactment of the R.C. 149.43(A)(1)(p) exemption for "[p]eaceofficer residential and familial information"). See 148 Ohio Laws, Part IV, 8624, effective December 16, 1999.

{¶ 33} In these cases, however, this court did not analyze whether home addresses of state employees constituted records under R.C. 149.011(G). In fact, *Public Emp. Retirees* was decided six years before R.C. 149.011 was first enacted, and that statute had been effective for only 16 days when *Police & Fire Retirees* was decided. See 141 Ohio Laws, Part II, 2768, effective July 1, 1985.

{¶ 34} In light of more recent developments in public-records law and interpretation, we overrule *Public Emp. Retirees* and *Police & Fire Retirees* to the extent that those cases hold that home addresses of state employees are public records. Those cases did not analyze the current statutory definition of "records." Further, other courts—including two Ohio appellate courts—have held otherwise. Abandoning this aspect of *Public Emp. Retirees* and *Police & Fire Retirees* is consistent with the plain language of R.C. 149.011(G) and more recent precedent, including *Bond, McCleary, Jones,* and *Miami Valley.*

{¶ 35} In *Miami Valley,* Montgomery App. No. 18928, 2002 WL 253637, which we find to be particularly well reasoned, the Second District Court of Appeals, after thoroughly examining the relevant considerations, persuasively explained why public-employee home addresses are not records for purposes of Ohio's Public Records Act. The *Miami Valley* court thoughtfully considered whether *Public Emp. Retirees* and *Police & Fire Retirees* compelled the opposite result and concluded that they did not.

{¶ 36} The Dispatch claims that like the Social Security numbers ("SSNs") of government employees at issue in *State ex rel. Beacon Journal Publishing Co. v. Akron* (1994), 70 Ohio St.3d 605, 640 N.E.2d 164, government-employee home addresses are records under R.C. 149.011(G). In *Akron,* 70 Ohio St.3d at 606, 640 N.E.2d 164, we observed that SSNs were "records" under the Public Records Act because the city used the SSNs as taxpayer-identification numbers in employee-payroll files. Ultimately, however, the court held that release of SSNs of city employees would violate the employees' constitutional right of privacy. Id. at 607, 640 N.E.2d 164. Therefore, our discussion in *Akron* concerning whether SSNs constituted records under R.C. 149.011(G) was dictum. Moreover, unlike the SSNs in *Akron,* there is no evidence here that state agencies use employee home addresses for taxpayer identification.

{¶ 37} The Dispatch further claims that because the General Assembly recently enacted the peace officer, firefighter, and EMT residential-and-familial-information exemption,[2] which includes "the actual personal residence" of peace officers, firefighters, and EMTs, the General Assembly could not have intended that the R.C. 149.011(G) definition of "records" excludes any other home addresses. R.C. 149.43(A)(1)(p) and (7)(a)(i). But the impetus for the enactment of this exemption was recent case law involving the constitutional right of privacy relating to police officers instead of any consideration of whether home addresses constituted records in the first instance. See, e.g., *Kallstrom v. Columbus* (C.A.6, 1998), 136 F.3d 1055, 1063–1064; *State ex rel. Keller v. Cox* (1999), 85 Ohio St.3d 279, 282, 707 N.E.2d 931. Similarly, the General Assembly added the SSN of any peace officer to the exemption even though we had *already* held that this information was exempt in *Akron.* See former R.C. 149.43(A)(7)(c), now 149.43(A)(7)(a)(iii), first enacted in 1999, 148 Ohio Laws, Part IV, 8625.

{¶ 38} In addition, the mere fact that the state agencies have released this information to the Dispatch in the past and have released this information to certain state-employee unions and nongovernmental vendors does not transform the addresses from nonrecords to records. "An individual's interest in control-

---

2. The "peace officer" residential exemption was enacted in 1999. See 148 Ohio Laws, Part IV, 8624. The firefighter and EMT exemptions were added in 2002. See 149 Ohio Laws, Part II, 3743.

ling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *United States Dept. of Defense,* 510 U.S. at 500, 114 S.Ct. 1006, 127 L.Ed.2d 325 (home addresses of federal agency employees); *Scottsdale Unified School Dist. No. 48 of Maricopa Cty. v. KPNX Broadcasting Co.* (1998), 191 Ariz. 297, 955 P.2d 534, ¶ 11. Based on *United States Dept. of Defense,* the mere fact that the state distributes records containing home addresses to state-employee unions and certain nongovernmental vendors or that some addresses are available through other public records, e.g., voter registration and county property records, does not extinguish state employees' privacy interests in those addresses.

{¶ 39} Finally, we emphasize that there are limited exceptions in which public-employee home addresses may constitute records as defined by R.C. 149.011(G). For example, when one of the employment requirements is that the employee live within a certain state, county, or municipality, that portion of the home address constitutes a record for purposes of the Public Records Act. Cf. R.C. 149.43(A)(7)(a)(i), which defines "[p]eace officer, firefighter, or EMT residential * * * information" to include the actual personal residence of the peace officer, firefighter, or EMT "except for the state or political subdivision in which the peace officer, firefighter, or EMT resides." And a different result may also occur when the public employee's work address is also that employee's home address.

{¶ 40} Therefore, based on the plain language of R.C. 149.011(G), persuasive case law interpreting that statute, and the overriding purpose of the Public Records Act to shed light on *government* activities, state-employee home addresses do not generally constitute records for purposes of R.C. 149.011(G) and 149.43. Hence, the state-agency respondents have no duty under R.C. 149.43 to disclose these addresses. Accordingly, we deny the Dispatch's request for a writ of mandamus to compel respondents to produce the requested state-employee home addresses.[3]

{¶ 41} We stress that our decision is narrow and focuses solely on the status of the addresses as "records." We are not signaling a retreat from our statements in previous cases that courts in Ohio must construe R.C. 149.43 liberally in favor of broad access to and disclosure of public records. See, e.g., *Gilbert,* 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, at ¶ 7. Today's holding has no application beyond the specific confines of the issue in this case. We will reject

---

3. We note that intervening respondent OCSEA's claim that R.C. 1347.05(G) prohibits release of state-employee home addresses is erroneous. See R.C. 149.43(D) ("Chapter 1347. of the Revised Code does not limit the provisions of this section"); see, also, *State ex rel. WBNS TV, Inc. v. Dues,* 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 34 ("the General Assembly rejected the balancing test by clarifying that the Privacy Act does not limit R.C. 149.43").

as unpersuasive the arguments of governmental bodies in future cases attempting to place great weight on this case as precedent in unrelated contexts.

## Mandamus: Applicability of Exemptions

{¶ 42} The Dispatch next argues that the state-agency respondents improperly withheld state-employee residential addresses based upon the peace officer, firefighter, or EMT residential-and-familial-information exemption and the constitutional right of privacy.

{¶ 43} We need not determine any of these additional claims. Because the requested state-employee home addresses are not records, a consideration of the applicability of exemptions to their disclosure, which assumes that they are records under R.C. 149.011(G), is unnecessary. "This is in accordance with our general rule that 'we will not issue advisory opinions * * *.' " *State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 34, quoting *State ex rel. Barletta v. Fersch,* 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452, ¶ 22. It is also consistent with the precept that " '[c]ourts decide constitutional issues only when absolutely necessary.' " *Essig* at ¶ 34, quoting *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 7, 716 N.E.2d 1114. We have applied this rule in public-records cases. See, e.g., *State ex rel. Beacon Journal Publishing Co. v. Akron,* 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 48.

## Mandamus: Delay in Producing Requested Records

{¶ 44} In its amended complaint, the Dispatch also requests a writ of mandamus compelling the state-agency respondents to "produce public records in the future _without delay._" (Italics and underlining sic.) The Dispatch is not entitled to the requested writ. It did not prove that state-employee home addresses were records subject to disclosure under R.C. 149.43. Nor did the Dispatch prove that the state-agency respondents unreasonably delayed in responding to the Dispatch's requests, given the breadth of the requests and the concerns over the employees' constitutional right of privacy. And even if the Dispatch had proved unreasonable delay, it would not have been entitled to the requested relief. See *State ex rel. Consumer News Servs., Inc. v. Worthington City Bd. of Edn.,* 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 51 ("We refuse, however, to grant the specific request by [relator] that respondents provide public records 'without delay,' because the statutory standard 'promptly' relates only to the right to inspection, and access to public records will ultimately be dependent upon the facts and circumstances of each request").

{¶ 45} Therefore, we deny the Dispatch's request for a writ of mandamus to compel the release of public records in the future without delay.

## Attorney Fees

{¶ 46} We also deny the Dispatch's request for attorney fees because its mandamus claims lack merit. See *State ex rel. Cranford v. Cleveland,* 103 Ohio St.3d 196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶ 25, quoting *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor* (2000), 89 Ohio St.3d 440, 448, 732 N.E.2d 969 (" 'Relators are not entitled to attorney fees concerning those [public-records] claims that were meritless' ").

## Motion for Sanctions

{¶ 47} On October 1, 2004, the Dispatch moved for sanctions based on alleged discovery abuses by the state-agency respondents in making witnesses and documents available. Citing Civ.R. 37, the Dispatch sought an order (1) holding that the records—including the residential addresses—are public records, (2) precluding the state-agency respondents from introducing any evidence, (3) holding that the state-agency respondents failed to timely release the requested records, and (4) striking the state-agency respondents' answer and affirmative defenses.

{¶ 48} Under Civ.R. 37(D), if a party fails to attend his deposition, serve answers to interrogatories, or respond to a request for inspection, "the court in which the action is pending on motion and notice may make such orders in regard to the failure as are just, and among others it may take any action authorized under subsections (a), (b), and (c) of subdivision (B)(2)" of the rule. Civ.R. 37(B)(2)(a), (b), and (c) permit orders establishing certain facts in accordance with the movant's claim, preventing the disobedient party from submitting evidence, striking pleadings, and rendering default judgment against the disobedient party.

{¶ 49} Two of the orders requested by the Dispatch are essentially for default judgment on its mandamus claims. "It is an abuse of discretion for a trial court to grant a default judgment for failing to respond to discovery requests when the record does not show willfulness or bad faith on the part of the responding party." *Toney v. Berkemer* (1983), 6 Ohio St.3d 455, 6 OBR 496, 453 N.E.2d 700, syllabus. Although the state-agency respondents may have failed to timely comply with some of the Dispatch's discovery requests, the record does not establish willful disregard of discovery rules or bad faith.

{¶ 50} Moreover, it would be unjust to punish innocent third parties—state employees—as a result of their public employers' possible discovery errors. Ultimately, the parties presented sufficient evidence on the dispositive issue of whether state-employee home addresses are records, as defined in R.C. 149.011(G). Cf. *State ex rel. Wallace v. State Med. Bd. of Ohio* (2000), 89 Ohio St.3d 431, 436, 732 N.E.2d 960 ("the Medical Board cannot unilaterally waive

others' privileges to confidentiality, because the Medical Board is not the holder of those privileges").

{¶ 51} Therefore, we deny the Dispatch's motion.

## Conclusion

{¶ 52} Based on the foregoing, we deny the requested writs of mandamus. The Dispatch is not entitled to a writ of mandamus to compel the state-agency respondents to disclose state employees' home addresses because they are not records under R.C. 149.011(G) and 149.43. That is, the requested state-employee home addresses do not serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the state agencies, and their release would not reveal anything to shed light on the conduct of state government. By so holding, we need not resolve the parties' remaining contentions concerning whether certain exemptions apply to the requested home addresses. The Dispatch is also not entitled to a writ of mandamus to "address" the alleged delay by the state-agency respondents in providing the requested records. We additionally deny the Dispatch's request for attorney fees and motion for sanctions.

Writs denied.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Zeiger, Tigges, Little & Lindsmith, L.L.P., John W. Zeiger, and Marion H. Little Jr., for relators.

Jim Petro, Attorney General, William C. Becker and Randall W. Knutti, Assistant Attorneys General, for respondents C. Scott Johnson, Department of Administrative Services, Adjutant General's Department, Department of Aging, Department of Agriculture, Department of Alcohol and Drug Addiction Services, Office of Budget and Management, Department of Commerce, Office of Criminal Justice Services, Department of Development, Environmental Protection Agency, Department of Health, Department of Insurance, Department of Job and Family Services, Lottery Commission, Department of Mental Retardation and Developmental Disabilities, Department of Public Safety, Department of Natural Resources, Department of Taxation, Department of Transportation, Bureau of Workers' Compensation, and Department of Youth Services.

Bricker & Eckler, L.L.P., Kurtis A. Tunnell, and Maria J. Armstrong, for respondents Ohio Department of Rehabilitation and Correction and Ohio Department of Mental Health.

Cloppert, Latanick, Sauter & Washburn, Robert W. Sauter, Ronald H. Snyder, and Kristin L. Seifert, for respondent Ohio Education Association.

Linda K. Fiely, Associate General Counsel, for intervening respondent OCSEA/AFSCME Local 11, AFL–CIO.

Crabbe, Brown & James L.L.P., Larry H. James, and Laura MacGregor Comek, urging denial of the writs for amicus curiae National Fraternal Order of Police.

Subodh Chandra, Cleveland Director of Law, Barbara A. Langhenry, Chief Assistant Director of Law, Thomas L. Anastos, and Julie A. Lady, Assistant Directors of Law, urging denial of the writs for amici curiae Cleveland Municipal Court and city of Cleveland.

