THE STATE EX REL. O'SHEA & ASSOCIATES COMPANY, L.P.A., APPELLEE, *v.* CUYAHOGA METROPOLITAN HOUSING AUTHORITY, APPELLANT.

[Cite as *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.,* 131 Ohio St.3d 149, 2012-Ohio-115.]

*Public records—Mandamus sought to compel respondent to release records documenting instances of lead poisoning in dwellings owned or operated by respondent—Portions of documents containing personal identifying information of residents are not public records—Judgment granting writ affirmed in part and denied in part.*

(No. 2010-1536—Submitted October 5, 2011—Decided January 19, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 93275, 190 Ohio App.3d 218, 2010-Ohio-3416.

_____

LUNDBERG STRATTON, J.

{¶ 1} This is an appeal from a judgment granting appellee, O'Shea & Associates Company, L.P.A. ("O'Shea"), a writ of mandamus to compel appellant, Cuyahoga Metropolitan Housing Authority ("CMHA"), to provide copies of all records that document any and all instances of lead poisoning in the last 15 years in any dwelling owned or operated by CMHA and awarding O'Shea $7,537.50 in attorney fees. Because portions of the requested copies are not obtainable pursuant to the Public Records Act, R.C. 149.43, we reverse the judgment of the court of appeals in part and deny the writ in part. We also reverse the judgment awarding O'Shea attorney fees.

**Facts**

{¶ 2} O'Shea is an Ohio law firm located in Rocky River, Ohio. On March 26, 2009, O'Shea requested that CMHA provide it with the following:

**{¶ 3}** "1. Copies of all liability insurance contracts which cover any and all premises liability issues for the last 20 years for any and all buildings owned or operated by CMHA;

**{¶ 4}** "2. Copies of all minutes of all meetings (for the last 10 years) wherein liability insurance and/or the process, methods and sources of paying legal claims for personal injury claims against CMHA are either discussed or decided; and

**{¶ 5}** "3. Copies of all documents which document any and all instances of lead poisoning in the last 15 years in any dwelling owned or operated by CMHA."

**{¶ 6}** By letter dated April 10, 2009, CMHA responded to O'Shea's request and advised O'Shea that certain insurance policies and meeting minutes were available at its office for inspection and copying. For the lead-poisoning records in the third request, CMHA claimed that the requested records were not public records.

**{¶ 7}** On May 11, 2009, O'Shea filed a verified petition in the Court of Appeals for Cuyahoga County for a writ of mandamus to compel CMHA to produce all the requested records. O'Shea also requested an award of attorney fees and statutory damages. CMHA filed a motion to dismiss O'Shea's petition because CMHA had produced every insurance policy from 2006 through the present in response to the first item of the request, and for the second and third items, the requests were overbroad and improperly sought selected information rather than specific records.

**{¶ 8}** In January 2010, the court of appeals granted CMHA's motion to dismiss regarding item two (minutes for meetings in which liability insurance or the payment of personal-injury claims were discussed) because the request improperly sought information rather than records. The court granted leave for

2

the filing of additional briefs and motions as to the remaining requests for the insurance policies and the lead-poisoning records.

{¶ 9} O'Shea moved for summary judgment on the issue of CMHA's failure to provide the lead-poisoning documents. In response, CMHA claimed that (1) O'Shea's request for the lead-poisoning documents was an improper request for information, (2) documents containing lead-paint incidents involving children were not records for purposes of the Public Records Act, and (3) the documents were exempt from disclosure. CMHA attached an affidavit from its chief general counsel in which she stated that when individuals inform CMHA of an elevated level of lead in their blood for themselves or one of their children, the CMHA handles the allegation as a potential legal claim. As part of its investigation, CMHA asks the individual to complete a questionnaire and provide an authorization for the release of medical information.

{¶ 10} CMHA attached copies of the forms to the affidavit. However, the attached forms refer only to reports for children. CMHA's questionnaire states that "[t]he purpose of this questionnaire is to determine the likely sources of lead exposure and to assist the Lead Risk Assessor in determining where environmental sampling should be conducted" and that "[a]ll information is confidential and will be maintained only at the CMHA Office of Environmental Affairs." The questionnaire asks for resident information, including the name, address, and telephone number of the resident and any children's names and dates of birth. It then requests general information, including where the child was likely exposed to lead, when the family moved into the home, the addresses, ages, and conditions of the dwellings in which the child resided in the past 12 months, and the dates of residency, and similar information if the child is cared for away from home. The questionnaire continues with queries designed to determine the child's exposure to lead, including lead-based paint and lead-contaminated dust hazards, lead-in-soil hazards, occupational and hobby-related hazards, child-

behavior risk factors, and other household-risk factors. For the occupational hazards, the questionnaire requests the family or other occupants' names, places of employment, jobs, and probable lead exposure on the job.

{¶ 11} CMHA's authorization for the release of medical information[1] is used to obtain a child's medical records held by the Cleveland Department of Public Health Lead Poisoning Prevention Program. This form also asks for the name of the parent or guardian of the minor child, the name, age, and address of the child, and the parent's or guardian's signature and Social Security number.

{¶ 12} On May 25, 2010, the court of appeals granted O'Shea's motion for summary judgment regarding the request for lead-poisoning documents and ordered CMHA to provide " '[c]opies of all documents which document any and all instances of lead poisoning in the last 15 years in any dwelling owned or operated by CMHA,' including—but not limited to—copies of each 'CMHA EBL Resident Questionnaire' ("Questionnaire") and 'CMHA Authorization for Release of Medical Information.' " The court, however, ordered CMHA to redact Social Security numbers from the completed forms. The court of appeals determined that O'Shea's request for lead-poisoning documents was not an improper request for information, the documents were records subject to the Public Records Act, and the documents were not exempt from disclosure.

{¶ 13} The court of appeals also awarded O'Shea $1,000 in statutory damages and granted leave to O'Shea to move for attorney fees.

{¶ 14} CMHA filed a motion for reconsideration and submitted evidence for the first time that purported to show—based on counsel's "information and belief"—that CMHA receives funding from the federal government that is

---

1. We emphasize that the medical-release authorization was not a form issued by either a hospital or other health-care provider. There is also no evidence that the authorization was generated or maintained by CMHA in the process of medical treatment. Furthermore, authorization for the release of medical records that is directed to a hospital or other health-care provider may, in other situations, constitute a medical record not subject to R.C. 149.43 because the release was executed for the purpose of further medical treatment or other issues.

administered through the United States Department of Housing and Urban Development ("HUD"). As a condition of its receipt of federal funding, CMHA is required to comply with all regulations and orders issued by HUD, including the Federal Privacy Act, Section 552a, Title 5, U.S.Code. CMHA argued that if it complied with the court's May 25, 2010 order, it would be in violation of HUD requirements related to protecting the privacy of public-housing residents.

{¶ 15} On July 20, 2010, the court of appeals entered its judgment in the case, reiterating the relief granted in its previous orders and also granting O'Shea $7,537.50 in attorney fees. The court of appeals also denied CMHA's motion for reconsideration.

{¶ 16} This cause is now before the court upon CMHA's appeal as of right. The parties submitted briefs, and the United States submitted amicus curiae briefs in support of CMHA.[2]

### Legal Analysis

*Mandamus in Public-Records Cases*

{¶ 17} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1). "We construe the Public Records Act liberally in favor of broad access and resolve any doubt in favor of disclosure of public records." *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 6.

{¶ 18} The parties do not dispute that CMHA is a public office for purposes of R.C. 149.43. CMHA instead claims that the court of appeals erred in granting the writ of mandamus to compel it to provide copies of lead-poisoning

---

2. On appeal, CMHA does not specifically challenge the court of appeals' rulings denying its motion for summary judgment and granting the writ on O'Shea's public-records mandamus claim for liability-insurance contracts and awarding O'Shea $1,000 in statutory damages. Therefore, we do not address these aspects of the court of appeals' judgment.

documents because O'Shea's request for these documents constituted an overbroad request for records, the documents are not records subject to R.C. 149.43, and the documents are exempt from disclosure under R.C. 149.43.

*A Request for Documents, Not Information*

{¶ 19} CMHA first contends that O'Shea's request for lead-poisoning documents was improper because it was ambiguous and overbroad, and it sought selected information instead of specific records. " '[I]t is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue.' " *State ex rel. Taxpayers Coalition v. Lakewood* (1999), 86 Ohio St.3d 385, 391, 715 N.E.2d 179, quoting *State ex rel. Fant v. Tober* (May 20, 1993), Cuyahoga App. No. 63737, 1993 WL 173743, *1. "Requests for information and requests that require the records custodian to create a new record by searching for selected information are improper requests under R.C. 149.43." *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 30.

{¶ 20} O'Shea's request was for "[c]opies of all documents which document any and all instances of lead poisoning in the last 15 years in any dwelling owned or operated by CMHA." Although this is an overbroad request for information, O'Shea argues on appeal that it was seeking, among other lead-poisoning documents, "lead citation reports, lead inspection reports, lead abatement reports, reports to HUD about lead issues and abatement, the location of residences that have lead problems, [and] correspondence from CMHA management about lead issues," records not specified in its request.

{¶ 21} But we must consider the propriety of a public-records request "in the context of the circumstances surrounding it." *New Lexington*, ¶ 33. When initially responding to O'Shea's request for lead-poisoning records, CMHA did not suggest that it was ambiguous or overbroad, or an improper request for information rather than records; it did not make that argument until after O'Shea

6

instituted its public-records mandamus case. And O'Shea itself had subsequently clarified its request, specifying that it requested records CMHA was "required by federal law to keep * * * of all instances of lead problem properties and repairs, as well as records of all instances where a child was poisoned." Ultimately, CMHA attached to its brief in opposition to O'Shea's motion for summary judgment copies of the resident questionnaire and the authorization for the release of medical information, which it agreed were responsive to O'Shea's request.

{¶ 22} Therefore, we hold that O'Shea's request for lead-poisoning records was appropriate.

*Are the Lead-Poisoning Documents*

*Records Subject to R.C. 149.43?*

{¶ 23} CMHA next claims that the requested lead-poisoning documents— including the questionnaire and medical-release authorization—are not records subject to disclosure under the Public Records Act. To establish that these documents are records for purposes of R.C. 149.011(G) and 149.43, O'Shea had to establish that they are (1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of CMHA, (3) which serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office. See *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 19.

{¶ 24} The two documents that CMHA has identified thus far—the completed questionnaire and medical-release authorization—meet the first two requirements of a record under R.C. 149.011(G) and 149.43. They are documents received by CMHA from its tenants when it has been reported that a child's blood has an elevated level of lead. The dispositive issue is whether they meet the third requirement: they must serve to document "the organization, functions, policies, decisions, procedures, operations, or other activities" of CMHA.

**{¶ 25}** On several occasions, we have addressed whether personal information is subject to disclosure pursuant to R.C. 149.43. In *State ex rel. McCleary v. Roberts* (2000), 88 Ohio St.3d 365, 725 N.E.2d 1144, we held that a city department's database containing the identifying, personal information of children who used city recreation facilities did not constitute a record for purposes of the Public Records Act because "[s]tanding alone, that information, *i.e.*, names of children, home addresses, names of parents and guardians, and medical information, does nothing to document any aspect of the City's Recreation and Parks Department." Id. at 368.[3]

**{¶ 26}** Furthermore, we emphasized in *McCleary* that the personal information requested was provided by private citizens rather than contained in the personnel file of a public employee. Consequently, we held that the personal information was outside the scope of R.C. 149.43 and not subject to disclosure. Id. at 369-370.

**{¶ 27}** In *State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 11, we relied on *McCleary* to hold that a newspaper was not entitled to juror-questionnaire responses and a list of juror names and addresses in an ongoing capital-murder trial, because those documents did not constitute records subject to R.C. 149.43:

**{¶ 28}** "Our reasoning in *McCleary* applies with equal force to the juror questionnaire responses and the list of juror names and addresses. The disclosure of information regarding prospective and impaneled jurors does little to ensure the accountability of government or shed light on the trial court's performance of its statutory duties."

---

3. The General Assembly later codified the holding in *McCleary* by excepting "[i]nformation pertaining to the recreational activities of a person under the age of eighteen" from the definition of "public record" for purposes of the Public Records Act. See R.C. 149.43(A)(1)(r) and (8).

{¶ 29} Similarly, in *Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, syllabus, we held that state-employee home addresses were not records subject to disclosure under R.C. 149.43. While "any state-agency policy requiring that its employees provide and update their home addresses would document a policy and procedure of a public office, * * * the home addresses themselves would not do so." Id. at ¶ 26.

{¶ 30} Like the documents at issue in *McCleary*, *Bond*, and *Johnson*, much of the personal information contained in the completed CMHA-resident questionnaire and the authorization for release of medical information does not serve to document "the organization, functions, policies, decisions, procedures, operations, or other activities" of CMHA.

{¶ 31} The court of appeals distinguished *McCleary* and instead compared this case to *State ex rel. Cincinnati Enquirer v. Daniels*, 108 Ohio St.3d 518, 2006-Ohio-1215, 844 N.E.2d 1181, in which we held that lead-citation notices issued to property owners of dwelling units reported to be the residence of children whose blood-test results indicate elevated lead levels and lead-risk-assessment reports maintained by the city health department were subject to disclosure under the Public Records Act. In reaching this conclusion, we emphasized that the notices and reports directed to specific property owners did not, for the most part, contain the same specific identifiable information that we had held in *McCleary* was not obtainable under R.C. 149.43:

{¶ 32} "[T]he lead-citation notices issued by the health department reveal that they are intended to advise the owners of real estate about results of department investigations and to apprise them of violations relating to lead hazards; the report identifies existing and potential lead hazards on the exterior and interior of the property, details the tests performed on the property and the results of those tests, explains the abatement measures required, provides advice about options to correct the problem, and mandates reporting of abatement

measures, including the name of the abatement contractor, the abatement method, and the date of expected abatement completion. *Nothing contained in these reports identifies by name, age, birth date, social security number, telephone number, family information, photograph, or other identifier any specific individual or details any specific medical examination, assessment, diagnosis, or treatment of any medical condition.* There is a mere nondescript reference to 'a' child with 'an' elevated lead level." (Emphasis added.) *Daniels* at ¶ 16.

{¶ 33} Here, as in *McCleary*, the questionnaire and medical-release authorization contain, in part, identifying information—names, birth dates, Social-Security and telephone numbers, and family information. The lead-citation notices and lead-risk-assessment reports at issue in *Daniels* did not contain the specific identifiable information addressed in *McCleary*. Therefore, the court of appeals erred in applying *Daniels* as authority to require disclosure of the entire completed questionnaire and authorization, subject only to redaction of Social Security numbers, when the documents contain specific personal, identifying information.

{¶ 34} The forms that CMHA requires its residents to complete further CMHA's statutory duty to "provide safe and sanitary housing accommodations to families of low income within that district." Like the lead-citation notices and assessment reports in *Daniels*, the residence addresses and the substantive information concerning general, nonidentifying information, lead-based paint and lead-contaminated dust hazards, water-lead hazards, lead-in-soil hazards, occupational or hobby hazards, and child-behavior risk factors would all be pertinent to an analysis of whether CMHA took steps to provide safe housing in specific CMHA dwellings with possible lead hazards. Release of this information would help to hold CMHA accountable for its statutory duty of reducing or eliminating any lead-related hazard in its residences and would reveal the

agency's success or failure in doing so, without requiring release of much of the residents' personal information.

**{¶ 35}** The lead-citation notices and lead-risk-assessment reports that we ordered disclosed in *Daniels* contained residence addresses. As in *Daniels*, the addresses contained in the completed lead-poisoning questionnaires and releases here help the public monitor CMHA's compliance with its statutory duty to provide safe housing. Therefore, the residence addresses in these completed forms are obtainable under R.C. 149.43.

**{¶ 36}** Based on the foregoing, we hold that the personal identifying information in CMHA lead-poisoning documents, such as the names of parents and guardians, their Social Security and telephone numbers, their children's names and dates of birth, the names, addresses, and telephone numbers of other caregivers, and the names of and places of employment of occupants of the dwelling unit, including the questionnaire and authorization, do not serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the CMHA and are not obtainable under the Public Records Act. However, the remainder of the completed forms is subject to disclosure under R.C. 149.011(G) and 149.43. If any question should arise about whether any portion of the completed forms discloses personally identifiable information, the court of appeals on remand will determine which portions should be redacted and not be subject to disclosure.

*The Records Are Not Exempt from Disclosure under R.C. 149.43*

**{¶ 37}** Finally, CMHA claims that the questionnaire and medical-release authorization, insofar as they constitute records for purposes of R.C. 149.43, are exempt from disclosure based on several grounds. "Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*,

118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, at paragraph two of the syllabus. We now consider CMHA's claimed exemptions.

*Federal Privacy Act*

{¶ 38} CMHA first claims that the federal Privacy Act, Section 552(a), Title 5, U.S.Code, prohibits the disclosure of the requested documents. CMHA's claim, however, lacks merit because the federal Privacy Act applies only to federal agencies. See *Schmitt v. Detroit* (C.A.6, 2005), 395 F.3d 327, 329 ("the Privacy Act * * * unambiguously defines the term 'agency' as an agency of the federal government"). In addition, CMHA claims that because it receives subsidies from the federal government, it is governed by a contract that requires CMHA to comply with the federal Privacy Act. CMHA, however, did not introduce evidence of this contractual relationship in opposition to O'Shea's motion for summary judgment. Instead, CMHA raised this issue in a motion for reconsideration, which was subsequently denied. The court of appeals did not abuse its discretion in denying CMHA's motion for reconsideration on its untimely raised argument. See *State ex rel. Miller v. Brady*, 123 Ohio St.3d 255, 2009-Ohio-4942, 915 N.E.2d 1183, ¶ 13 (court of appeals did not abuse its discretion in denying what was essentially a motion for reconsideration of an interlocutory order in a public-records mandamus case, because respondent failed to timely raise a claim in response to an alternative writ and show-cause order).

{¶ 39} Moreover, CMHA's claim that disclosure of the lead-poisoning documents *may* be a violation of HUD requirements was insufficient to meet its burden to prove that the requested records "fall squarely within the exception." *Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, at paragraph two of the syllabus.

{¶ 40} Therefore, CMHA failed to establish that the federal Privacy Act exempted the records from disclosure.

*Medical Records*

**{¶ 41}** CMHA next argues that the lead-poisoning documents, including the questionnaire and medical-release authorization, are excepted from disclosure as medical records under R.C. 149.43(A)(1)(a). " 'Medical record' means any document or combination of documents, except births, deaths, and the fact of admission to or discharge from a hospital, that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient *and that is generated and maintained in the process of medical treatment*." (Emphasis added.) R.C. 149.43(A)(3).

**{¶ 42}** To be excepted from disclosure, medical records "must meet the conjunctive requirements of the statute." *State ex rel. Strothers v. Wertheim* (1997), 80 Ohio St.3d 155, 158, 684 N.E.2d 1239. There is no evidence here that the requested records, including the completed questionnaires and medical-release authorizations, although they may touch upon a child's medical history, are generated and maintained in the process of the child's medical treatment. Instead, they are generated and maintained to help eliminate or reduce lead exposure in CMHA residences.

**{¶ 43}** Therefore, CMHA has not established that the requested records are excepted from disclosure as medical records.

*Trial-Preparation and Investigatory Work-Product Materials*

**{¶ 44}** CMHA asserts that the requested records are also exempted from disclosure as trial-preparation and investigatory work-product materials. See R.C. 149.43(A)(1)(g) and (h). Notwithstanding CMHA's claims that the records were compiled to defend against lawsuits based on lead exposure instituted against it, the questionnaire itself specifies a different purpose: "to determine the likely sources of lead exposure and to assist the Lead Risk Assessor in determining where environmental sampling should be conducted." Moreover, there is insufficient evidence here to support the claim that the questionnaire and medical-

release authorization were prepared in anticipation of litigation. CMHA failed to demonstrate that these documents were work-product materials or documents prepared in anticipation of trial. Therefore, CMHA has not established that the subject records are exempted from disclosure as either trial-preparation or work-product material.

*Attorney Fees*

{¶ 45} CMHA is correct, however, that the court of appeals erred in awarding attorney fees to O'Shea. The court's award was premised in part upon its conclusion that O'Shea was entitled to all the requested lead-poisoning documents. As previously discussed, however, O'Shea is not entitled to most of the personal identifying information contained in these records. Moreover, O'Shea was represented by its principal attorney, Michael J. O'Shea, in the public-records mandamus case. But O'Shea introduced no evidence that it either paid or was obligated to pay its own counsel attorney fees. These fees are consequently not available in the mandamus case. See *State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 62, and cases cited therein; *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 24; see also R.C. 149.43(C)(2)(c) ("reasonable attorney's fees awarded under this section shall be construed as * * * not punitive").

{¶ 46} Therefore, the court of appeals erred in awarding attorney fees to O'Shea.

*Additional Amicus Curiae Argument*

{¶ 47} Insofar as the United States raises additional arguments that are not raised by the parties to this action, we need not address them. See *Wellington v. Mahoning Cty. Bd. of Elections*, 117 Ohio St.3d 143, 2008-Ohio-554, 882 N.E.2d 420, ¶ 53.

**Conclusion**

**{¶ 48}** As clarified by O'Shea, its records request included records that CMHA was "required by federal law to keep * * * of all instances of lead problem properties and repairs," which may encompass records in addition to the questionnaire and authorization. CMHA did not submit evidence that other records involving lead problems do not exist. Therefore, to the extent that O'Shea's request properly sought additional lead-poisoning records, the court of appeals did not err in granting the writ of mandamus to compel CMHA to provide access to them.

**{¶ 49}** However, based on the foregoing, we reverse that portion of the court of appeals judgment granting the writ of mandamus to compel CMHA to disclose the portions of the requested lead-poisoning documents that constitute personal identifying information, including those portions of the completed questionnaire and release that contain the names of parents and guardians, their telephone numbers, their children's names and dates of birth, the names, addresses, and telephone numbers of other caregivers, and the names of and places of employment of occupants of the dwelling unit, and we remand the cause to the court of appeals for further proceedings consistent with this opinion.

**{¶ 50}** We affirm the portion of the court of appeals judgment ordering the disclosure of the remaining portions of the requested documents, including other records that may exist in response to O'Shea's request beyond the questionnaire and authorization, which are records subject to disclosure under R.C. 149.43, with the additional redaction of Social Security numbers and any other personal identifying information. Finally, we reverse the award of attorney fees to O'Shea.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

O'CONNOR, C.J., and LANZINGER, CUPP, and MCGEE BROWN, JJ., concur. PFEIFER and O'DONNELL, JJ., concur in part and dissent in part.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

**{¶ 51}** I concur in the judgment in this case granting the writ of mandamus to compel Cuyahoga Metropolitan Housing Authority ("CMHA") to provide the requested documents, with personal identifying information redacted. I dissent from the portion of the opinion denying attorney fees to O'Shea & Associates Company, L.P.A., for work performed on its behalf by its principal attorney, Michael J. O'Shea.

**{¶ 52}** The majority justifies its denial of an award of attorney fees in part by stating, "O'Shea is not entitled to most of the personal identifying information contained in these records." Majority opinion at ¶ 45. However, CMHA fought tooth and nail to keep from having to produce the documents at all. They were not arguing for redactions, but for full-scale withholding of the documents O'Shea sought. CMHA was wrong.

**{¶ 53}** Secondly, the majority states that the firm "introduced no evidence that it either paid or was obligated to pay its own counsel attorney fees." The majority cites *State ex rel. Beacon Journal Publishing Co. v Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 62. But in *Beacon Journal,* the newspaper sought attorney fees for its in-house counsel; this court held that the newspaper submitted no proof that it had incurred any attorney fees in addition to its attorney's regular salary and benefits for the work she performed on the mandamus case. Here, Michael O'Shea is not in-house counsel for his law firm; he is the principal partner at the firm. CMHA makes no argument that he is a salaried employee of the law firm. As an attorney in a law firm, his time is his livelihood, and CMHA wasted a lot of it.

{¶ 54} R.C. 149.43(C)(2)(c) states that a court may reduce attorney fees or not award them at all if it determines both "(i) [t]hat, based on the ordinary application of statutory law and case law as it existed at the time of the conduct * * *, a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records did not constitute a failure to comply with an obligation [to provide the records]" and "(ii) [t]hat a well-informed public office or person responsible for the requested public records reasonably would believe that the * * * public office * * * responsible for the requested public records * * * would serve the public policy that underlies the authority that is asserted as permitting that conduct."

{¶ 55} There was no reason to believe that the withholding of the public records in this case was based upon a reasonable interpretation of statutory or case law. Therefore, I would not overturn the decision by the court of appeals to award attorney fees in this case.

O'DONNELL, J., concurs in the foregoing opinion.

_____

O'Shea & Associates Co., L.P.A., and Michael J. O'Shea, for appellee.

Weston Hurd, L.L.P., Shawn W. Maestle, and Hilary S. Taylor, for appellant.

Steven M. Dettelbach, United States Attorney, Kent Penhallurick, Assistant United States Attorney, and Daniel J. Lenerz, United States Department of Justice, urging reversal for amicus curiae, United States of America.

_____