[Cite as *State ex rel. Bott Law Group, L.L.C. v. Ohio Dept. of Natural Resources*, 2013-Ohio-5219.]

IN THE COURT OF APPEALS OF OHIO

TENON TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Bott Law Group, LLC, | : | |
| | : | |
| Relator, | : | |
| | : | No. 12AP-448 |
| v. | : | (REGULAR CALENDAR) |
| Ohio Department of Natural Resources, | : | |
| | : | |
| Respondent. | : | |

D E C I S I O N

Rendered on November 26, 2013

*Bott Law Group, LLC, April R. Bott, Sarah L. Herbert,* and *MacDonald W. Taylor,* for relator.

*Michael DeWine,* Attorney General, *Robert Moormann* and *Jeffrey Clark,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

CONNOR, J.

{¶ 1} Relator, Bott Law Group, LLC, brings this original action seeking a writ of mandamus ordering respondent, the Ohio Department of Natural Resources ("ODNR"), to provide it with copies of all non-exempt public records that are responsive to its May 17, 2011, October 11, 2011, and February 3, 2012 public records requests. In addition, relator seeks damages in the form of the attorney fees and court costs associated with this action.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   Relator is a law firm that represents energy companies and municipalities involved in horizontal drilling for oil and gas, commonly known as "fracking."  ODNR is the primary oil and gas regulatory and enforcement authority in Ohio.

{¶ 3}   In 2010, two of relator's clients, Patriot Water Treatment LLC ("Patriot"), and the city of Warren, Ohio ("Warren") obtained fracking permits from the Ohio Environmental Protection Agency ("OEPA").   Relator subsequently commenced proceedings on behalf of Patriot and Warren in both the Environment Review Appeals Commission and the Trumbull County Court of Common Pleas, challenging certain provisions in the permits, which according to relator, represent a "devastating [OEPA] policy change."  (Relator's brief, 2.)

{¶ 4}   In connection with the litigation, relator served several public records requests upon ODNR seeking information relevant to the ongoing litigation.  On May 17, 2011, relator, on its own behalf, submitted its first request seeking responsive documents "from January 1, 2009 to present."[1]  ODNR forwarded the request for review to Charles Rowan, ODNR's chief legal counsel.

{¶ 5}   On June 6, 2011, Rowan responded to the request by sending responsive records to relator via U.S. mail.  Thereafter, on June 30, 2011, Rowan supplemented ODNR's response by providing relator with a compact disc containing additional responsive records.  According to relator, copies of approximately 300 pages of responsive records were provided to relator.

{¶ 6}   Relator served a second public records request upon ODNR on October 27, 2011, via electronic mail ("e-mail").  The second request was similar to the first except that, in the second request, relator sought copies of all responsive records "from May 1, 2011 to present."  According to ODNR, relator's second public records request added additional "broad and sweeping requests."  (ODNR's brief, 10.)  In a November 1, 2011 letter to relator, Rowan stated: "With respect to your bulleted requests, please be advised

---

[1] Relator served a total of seven public records requests during the relevant time period.  However, only three of those requests are at issue in this case.  Additionally, because the magistrate's decision contains the text of relator's three relevant public records requests, we will not reproduce them herein.

they lack clarity, are over inclusive, and require what would be a complete duplication of ODNR's files relative to specifically identified names and topics."  (Stipulated Evidence, exhibit No. 6.)  Relator, by and through MacDonald W. Taylor, responded to Rowan with an e-mail requesting that ODNR "identify any aspect of my request that you feel lacks clarity, so that I can assist you in clarifying it." (Stipulated Evidence, exhibit No. 7.) Rowan did not respond to the e-mail.  However, on November 10, 2011, and again on November 23, 2011, ODNR sent responsive records to relator via U.S. mail.  A total of 460 pages of responsive records were forwarded to relator pursuant to the October 27, 2011 request.

{¶ 7}   On February 3, 2012, relator served a third public records request upon ODNR employees Beth Wilson and Tom Tomastik.  Relator subsequently served the same request upon Rowan on February 6, 2012.  On March 5, 2012, Rowan forwarded 35 responsive records to relator via U.S. mail.

{¶ 8}   On April 10, 2012, relator and the Ohio Attorney General deposed John Husted, the former chief of ODNR's Division of Mineral Resources Management ("DMRM").  During the deposition, Husted produced an e-mail correspondence dated July 21, 2009.  According to relator, although Husted's e-mail was clearly responsive to relator's May 17, 2009 public records request, ODNR had failed to produce the e-mail in response to relator's request.

{¶ 9}   When relator inquired of ODNR about the e-mail, Rowan informed relator that Husted's 2009 records were "beyond the department's records retention schedule for email correspondence (2 years)." (Stipulated Evidence, exhibit No. 18, at 2.)   Relator responded that Husted's e-mail was generated within two years of relator's May 17, 2011 public records request, and that it should have been produced.  Thereafter, on April 19, 2012, Rowan delivered a compact disc to relator containing an additional 1,200 responsive documents, roughly 7,000 pages.  ODNR produced two additional records to relator on May 1, 2012.  (Stipulated Evidence, exhibit No. 20; Relator's Certified Evidence, exhibit No. 35.)

{¶ 10} On May 25, 2012, relator filed an original action in this court seeking a writ of mandamus ordering ODNR to provide it with copies of all non-exempt records that are responsive to the "May 17 Request, October 11 Request, and the February 3 Request, including documents from the ODNR Oil and Gas program, the Division of Oil and Gas Resources Management and the Division of Mineral Resources Management." (Complaint, 9.)  Relator also seeks a "judgment awarding attorney's fees and court costs associated with bringing this action." (Complaint, 9.)  Significantly, however, relator does not seek "statutory damages" pursuant to R.C. 149.43(C)(1).[2]

{¶ 11} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who rendered a decision and recommendation that includes findings of fact and conclusions of law, which is appended hereto.  The magistrate concluded that ODNR complied with the public records laws in responding to each of relator's public records requests, and that relator was not entitled to damages.  Accordingly, the magistrate recommended that we deny relator's application for a writ of mandamus.  Relator has filed objections to the magistrate's decision and the matter is now before us for our independent review.

## II.  STANDARD OF REVIEW

{¶ 12} The purpose of a writ of mandamus is to " 'compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station.' " *State ex rel. Timson v. Shoemaker,* 10th Dist. No. 02AP-1037, 2003-Ohio-4703, ¶ 16, quoting *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165, 166 (1977).  In order to be entitled to a writ of mandamus, relator must demonstrate: "(1) * * * a clear legal right to the relief prayed for; (2) that respondents are under a clear legal duty to perform the acts;

---

[2] R.C. 149.43(C)(1) provides in relevant part: "The amount of *statutory damages* shall be fixed at one hundred dollars for each business day during which the public office or person responsible for the requested public records failed to comply with an obligation in accordance with division (B) of this section, beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars." (Emphasis added.)

and (3) that relator has no plain and adequate remedy in the ordinary course of the law." *State ex rel. Harris v. Rhodes*, 54 Ohio St.2d 41, 42 (1978).

{¶ 13} Relator must establish an entitlement to extraordinary relief by clear and convincing evidence. *State ex rel. Doner v. Zody,* 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 57. Clear and convincing evidence is " 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 14} Pursuant to Civ.R. 53(D)(3)(b)(4)(d): "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Relator has interposed seven objections to the magistrate's decision.

## III.  ANALYSIS

{¶ 15} The Public Records Act must be construed liberally in favor of broad public access, and any doubt must be resolved in favor of disclosure of public records. *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office,* 126 Ohio St.3d 224, 2010-Ohio-3288, ¶ 6. The primary duty of an agency when responding to a public records request is set out in R.C. 149.43(B)(1), in relevant part, as follows:

> Upon request and subject to division (B)(8) of this section, all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. * * * [U]pon request, a public office or person responsible for public records shall make copies of the requested public record available at cost and within a reasonable period of time."

{¶ 16} Relator's second, third, fourth, fifth, and sixth objections raise questions whether ODNR performed its statutory duty to promptly prepare *all* public records

responsive to relator's public records requests, and whether ODNR made all such records available to relator "within a reasonable period of time." Accordingly, we will consider these objections together.

{¶ 17} The magistrate determined that ODNR promptly prepared all public records responsive to relator's three separate requests, and that ODNR made copies of such records available to relator within a reasonable period of time. In its second objection, relator claims that clear and convincing evidence establishes that ODNR provided certain responsive records in an untimely manner. Based upon such evidence, relator contends that ODNR failed to promptly prepare *all* responsive records to make copies of *all* such records available to relator "within a reasonable period of time." We agree.

{¶ 18} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, ¶ 6; R.C. 149.43(C)(1). The evidence establishes that ODNR employee, Husted, performed a search of his personal computer in preparation for his April 10, 2012 deposition, and that he was able to recover at least one e-mail correspondence that was both responsive to relator's October 27, 2011 public records request, and which was omitted from ODNR's response. The evidence also establishes that several other e-mails responsive either to relator's May 17 or October 27, 2011 public records requests, were not among the records made available to relator in June 2011.[3] Case law has adopted the ordinary and customary meaning of the word "promptly" for purposes of the Public Records Act, which is, "without delay and with reasonable speed." *See State ex. rel. Young v. Bd. of Edn. Lebanon School Dist.,* 12th Dist. No. CA2012-02-013, 2013-Ohio-1111, ¶ 15, citing *State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002-Ohio-5311, ¶ 37. We have defined the word "prompt" in this context as "performed readily or immediately." *See State ex rel. McCray v. Ohio Dept. of Commerce,* 10th Dist. No.

---

[3] *See* Husted e-mail dated May 9, 2011, two e-mails dated January 25, 2011, and an e-mail dated December 22, 2010. *See also* Amy Childers' e-mail dated October 20, 2010, and a July 26, 2010 e-mail to Rick Simmers. (Relator's Certified Evidence, exhibit No. 34.)

11AP-1055, 2012-Ohio-2997 (adopting magistrate's decision citing *Webster's Eleventh New Collegiate Dictionary* 994 (2005)).

{¶ 19} ODNR admits that on April 19, 2012, it produced copies of an additional 7,000 pages of responsive public records. While we realize that all of these records may not be relevant and material to the purpose for which relator intends to use them, ODNR has identified the records as responsive. Thus, there is clear and convincing evidence in the record that ODNR failed to promptly prepare all responsive records and to make all such records available to relator within a reasonable period of time. Accordingly, relator's second objection is sustained.

{¶ 20} The magistrate determined that ODNR's belated production of approximately 1,200 responsive public records was not relevant to the issue of timeliness inasmuch as ODNR made copies of some of the responsive records available to relator within a reasonable period of time after the request was served. In relator's third objection, relator contends that the magistrate's determination was contrary to the public records laws. We agree.

{¶ 21} Pursuant to R.C. 159.43(B)(1), ODNR's clear legal duty is to promptly prepare *all* responsive records and to make copies of *all* such records available to relator within a reasonable period of time. In other words, all means all. While we recognize that the statute imposes a sizeable burden upon responding agencies such as ODNR, and that the evidence shows that ODNR expended considerable time and resources in an effort to comply with its statutory duty, " '[n]o pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the [public agency] to evade the public's right to inspect and obtain a copy of public records within a reasonable time.' " *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.*, 39 Ohio St.3d 108, 111 (1988), quoting *State ex rel. Beacon Journal Publishing Co. v. Andrews*, 48 Ohio St.2d 283, 289 (1976). Indeed, a public agency "is under a statutory duty to organize [its] office and employ [its] staff in such a way that [its] office will be able to make [public] records available for inspection and to provide copies when requested within a reasonable time."

*Id.*, quoting *State ex rel. Beacon Journal. See also State ex rel. Hartkemeyer v. Fairfield Twp.*, 12th Dist. No. CA2012-04-080, 2012-Ohio-5842, ¶ 25.

{¶ 22} In short, we find that ODNR fell short of meeting its clear legal duty under R.C. 149.43(B)(1) when it timely, yet incompletely, responded to relator's public records requests. While the extent to which ODNR made a good-faith effort to comply with its clear legal duty may be relevant to the issue of damages, under the facts of this case, ODNR's good or bad faith is not probative of ODNR's compliance with R.C. 149.43(C)(1).[4] Relator's third objection is sustained.

{¶ 23} In its fourth objection, relator challenges the magistrate's finding that "ODNR has provided relator with all the documents related to the public records requests and there is nothing that a writ of mandamus could compel." (Magistrate's Decision, 24.) According to relator, the record contains clear and convincing evidence both that other responsive records exist and that ODNR failed to promptly prepare such records. We agree.

{¶ 24} With regard to e-mail correspondence, ODNR Chief Information Technology Officer, Jeffrey A. Rowley, testified that ODNR installed software in September 2010 that permits ODNR to recover and retrieve deleted employee e-mails. (Stipulated Evidence, exhibit No. 30, at 17.) According to Rowley, any e-mail that is initially received or transmitted by ODNR after September 2010 is preserved on ODNR's computerized "journal," and it may be recovered at any time, even if the employee has deleted it from both the desktop and mailbox ("double deleted"). (Stipulated Evidence, exhibit No. 30, at 17-18.) Rowley acknowledged that e-mails first received or transmitted by ODNR prior to September 2010 may only be recovered from the individual employee's desktop or mailbox. (Stipulated Evidence, exhibit No. 30, at 25.) When such e-mails are

---

[4] The court may reduce an award of attorney fees where both of the following apply: "(a) [B]ased on the ordinary application of statutory law and case law as it existed at the time of the conduct * * * of the public office * * * that allegedly constitutes a failure to comply with an obligation in accordance with division (B) of this section and that was the basis of the mandamus action, a well-informed public office * * * reasonably would believe that the conduct or threatened conduct of the public office * * * did not constitute a failure to comply with an obligation in accordance with division (B) of this section; (b) That a well-informed public office * * * reasonably would believe that the conduct * * * of the public office * * * would serve the public policy that underlies the authority that is asserted as permitting that conduct."

double deleted, they are preserved for only 30 days thereafter. (Stipulated Evidence, exhibit No. 30, at 20.)

{¶ 25} In an April 17, 2012 letter to relator, Rowan informed relator that ODNR has adopted a two-year records retention policy concerning e-mail correspondence. (Stipulated Evidence, exhibit No. 18.) In *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.,* 120 Ohio St.3d 372, 2008-Ohio-6253, the Supreme Court of Ohio held that a public office has a duty under R.C. 149.43(B) to recover and provide access to e-mails that were unlawfully deleted. *Id.* at ¶ 19.

{¶ 26} Rowley testified that he is the only employee currently authorized to retrieve deleted e-mails from the journal; that he was never asked to perform a search of the journal in connection with relator's May 17, 2011 public records request; that he was not asked to perform a journal search in connection with the October 27, 2011 public records request until April 2012, and that he was not asked to perform a journal search in connection with relator's February 12, 2012 public records request until August 2012. According to Rowley, he completed the April and the August 2012 journal searches within one week. (Stipulated Evidence, exhibit No. 30, at 17, 38-40, 69-70, 75.)

{¶ 27} With regard to other computerized files, Rowley explained that if a file is copied to the shared server it will remain on the system even after it is deleted, and that an employee who is subsequently granted permission to access the particular file folder can recover the file through his office. Rowley testified that the task of locating and accessing files contained only on an employee's personal computer is within the purview of the individual employee and/or the domain administrator. (Stipulated Evidence, exhibit No. 30, at 78.) With regard to files in the personal computers of employee's who have left ODNR, Rowley testified that an inventory review would reveal the location of the particular employee's computer. (Stipulated Evidence, exhibit No. 30, at 84.)

{¶ 28} According to Rowley, the new division chief decides whether to preserve the files on the personal computer of his or her predecessor. (Stipulated Evidence, exhibit No. 30, at 120.) Here, the evidence shows that Husted recovered the e-mail correspondence that precipitated this litigation (Stipulated Evidence, exhibit No. 16) only

after he resumed his employment with ODNR and conducted a search of his archived files. (Stipulated Evidence, exhibit No. 30, at 118.)

{¶ 29} Based upon the foregoing, we find that ODNR had a clear legal duty to make copies of all responsive records available to relator within a reasonable period of time, but that ODNR failed to do so. Clear and convincing evidence establishes that ODNR has not taken the steps necessary to recover other responsive records including e-mails that may have been deleted in violation of ODNR's records retention policy, and records that are stored on the personal computers of key employees who subsequently left ODNR. Accordingly, ODNR has not performed its clear statutory duty to promptly prepare all responsive records. Relator's fourth objection is sustained.

{¶ 30} In relator's fifth objection, relator takes exception to the magistrate's conclusion that this public records dispute involves only three documents. We agree with relator.

{¶ 31} As we have determined in connection with relator's second, third, and fourth objections, relator has presented clear and convincing evidence that ODNR provided more than 1,200 responsive records in April 2012, shortly after it learned that certain responsive records had been omitted from ODNR's prior responses, but well after ODNR deemed its responses "completed." (Rowan affidavit, ¶ 18, 33, 43.) We have also determined that ODNR failed to conduct the activities necessary to retrieve all responsive records. Thus, the magistrate's conclusion that ODNR complied with its clear legal duty is both factually unsupported and contrary to law. Accordingly, relator's fifth objection is sustained.

{¶ 32} Relator's sixth objection challenges the magistrate's determination that relator was not entitled to a writ of mandamus inasmuch as the three documents ODNR failed to timely provide were previously obtained by relator through its representation of Patriot and Warren. Essentially, the magistrate found that relator was not prejudiced by ODNR's failure to promptly prepare all responsive records. However, there is nothing in the public records law that prohibits a requester from seeking public records simply because the requester may have previously obtained some of the requested records via

other means.  Nor is it necessary in this case for relator to prove harm or prejudice in order to obtain a writ of mandamus.  *See State ex rel. Timson* at ¶ 16.  Moreover, under R.C. 149.43(B)(5), a "requester may decline to reveal the requester's identity or the intended use" for the requested public records.  Thus, the magistrate's analysis is inapposite.

{¶ 33} Based upon the foregoing, relator's sixth objection is sustained.

{¶ 34} In relator's first objection, relator challenges the magistrate's conclusion that each of relator's three public records requests was "complex and expansive."  To the extent that the magistrate considered the complexity and expansiveness of the records requests in concluding that ODNR had acted reasonably in responding to the requests, our attention is directed to R.C. 149.43(B)(2), which provides:

> To facilitate broader access to public records, a public office or the person responsible for public records shall organize and maintain public records in a manner that they can be made available for inspection or copying in accordance with division (B) of this section. A public office also shall have available a copy of its current records retention schedule at a location readily available to the public. *If a requester makes an ambiguous or overly broad request* or has difficulty in making a request for copies or inspection of public records under this section such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, the public office or the person responsible for the requested public record may deny the request but *shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties.*

(Emphasis added.)

{¶ 35} At the outset, we note that there is no specific form which a public records request must take.  *State ex rel. Oriana House, Inc. v. Montgomery*, 10th Dist. No. 04AP-492, 2005-Ohio-3377, ¶ 89.  The evidence shows that ODNR did not inform relator that

the May 17, 2011 and February 3, 2012 public records requests were either ambiguous or overly broad. Although Rowan believed that relator's requests were unclear and overly inclusive, he did not inform relator of his belief, nor did he ask relator to revise the requests. The magistrate concluded that ODNR's failure to inform relator of the alleged ambiguity and over breadth of these requests was of no consequence inasmuch as its duty arises only where the agency fails to provided copies of responsive records within a reasonable period of time.

{¶ 36} However, as noted above, ODNR did not promptly prepare *all* records responsive to relator's May 17, 2011 request, and did not make *all* such records available to relator within a reasonable period of time. Thus, ODNR's response to the May 17, 2011 records request was incomplete. Similarly, we have determined in connection with relator's fourth objection that ODNR did not perform the acts necessary to promptly prepare all records responsive to the October 27, 2011 and February 3, 2012 public records requests.

{¶ 37} Nothing in the statutory language suggests that a prompt, yet incomplete, response to an allegedly ambiguous and overly broad public records request, relieves the responding agency of its duty to inform the requestor of such ambiguity or over breadth. In fact, ODNR's own "Public Records Policy-Procedure" ("policy"), provides in relevant part:

> If a request is received by the Department, and it is not clear what records are being sought, the Division/Office Coordinator, Department Record Officer, or Legal Counsel will contact the requester for clarification, and assist the requester in revising the request by informing the requester of the manner in which the office mainatains its records.

(Stipulated Evidence, exhibit No. 21, at 2.)

{¶ 38} Under both the statute and the policy, the requestor's duty to revise the request arises only after the agency has informed the requestor that the request is either ambiguous or overly broad. If ODNR believed the May 17, 2011 and February 3, 2012 public records requests were so ambiguous and overly broad as to relieve it of its duty to

promptly prepare responsive records, ODNR was obligated to inform relator of the issue and to ask relator to revise the request. The use of the word "shall" in R.C. 149.43(B)(2), and "will" in ODNR's policy means that the duty is mandatory.

{¶ 39} With respect to the October 27, 2011 public records request, the evidence shows that Rowan informed relator that ODNR considered the request to be both unclear and overly inclusive, and he asked relator to revise the request. Rowan did not, however, deny the request as is permitted under R.C. 149.43(B)(2), nor did he inform relator of the manner in which ODNR records are maintained and accessed by its employees in the ordinary course of its business, as is required by R.C. 149.43(B)(2).[5] When relator subsequently asked for guidance in revising its request, ODNR did not respond.

{¶ 40} We acknowledge that it is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue, and that the Public Records Act does not contemplate a complete duplication of voluminous files kept by government agencies. *See, e.g.*, *State ex rel. Morgan v. New Lexington,* 112 Ohio St.3d 33, 2006-Ohio-6365, ¶ 29; *State ex rel. The Warren Newspapers, Inc. v. Hutson,* 70 Ohio St.3d 619, 624 (1994); *State ex rel. Zauderer v. Joseph,* 62 Ohio App.3d 752 (10th Dist.1989). We are also aware of the case law holding that a writ of mandamus will not issue to compel prompt responses to vague and overly broad public records requests. *Id. See also State ex rel. Dillery v. Icsman,* 92 Ohio St.3d 312 (2001). Although the records requests at issue in this case are comprehensive in terms of the types of records requested, the requests contain limitations as to the time frame, subject matter, and, in most instances, the specific employee(s) concerned. Moreover, ODNR's policy states that ODNR's knowledge of the requestor's identity and the intended use of the public records "could enhance the Department's ability to identify, locate and/or deliver responsive public records." (Stipulated Evidence, exhibit No. 21, at 2.) There is no doubt that ODNR has the necessary knowledge in this case.

---

5 R.C. 149.43(B)(3) also requires that "[i]f a request is ultimately denied, in part or in whole, the public office or the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied."

{¶ 41} In short, while we agree with the magistrate's characterization of relator's public records requests as "complex and expansive," the relevant evidence and the applicable law do not support the magistrate's conclusion that such complexity and expansiveness relieved ODNR of its obligation to promptly prepare all responsive records. This is particularly true with respect to the May 17, 2011 and February 3, 2012 requests, inasmuch as ODNR failed to informed relator of the alleged ambiguity and over breadth of the requests and failed to provide relator with the opportunity of revision.

{¶ 42} Accordingly, relator's first objection is sustained.

{¶ 43} In relator's seventh objection, relator argues that the magistrate erred in concluding that it was not entitled to damages in the form of attorney fees. R.C. 143.43(C)(1) provides for an award of attorney fees as follows:

> If a person allegedly is aggrieved by the failure of a public office * * * to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section * * * the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section, that awards court costs and reasonable attorney's fees to the person that instituted the mandamus action

{¶ 44} "Reasonable attorney's fees awarded under [R.C. 149.43(C)] shall be construed as remedial and not punitive." R.C. 149.43(C)(2)(c); *see also State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register,* 116 Ohio St.3d 88, 2007-Ohio-5542, ¶ 24.

{¶ 45} ODNR argues that relator is not entitled to attorney fees under the public records law inasmuch as relator made the public records requests on its own behalf and relied exclusively upon the labor of its own lawyers in prosecuting the action. According to ODNR, relator is a pro se litigant and, as such, relator is not entitled to recover attorney fees in this public records action. We agree.

{¶ 46} The Supreme Court of Ohio has consistently held that an award of attorney fees is not available to the aggrieved party under the public records act absent evidence

that the party paid, or was obligated to pay, an attorney to prosecute the action. *See, e.g.*, *State ex rel. Beacon Journal* at ¶ 62; *State ex rel. O'Shea & Assoc. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 149, 2012-Ohio-115*; State ex rel. Besser v. Ohio State Univ.*, 87 Ohio St.3d 535, 542-43 (2000). *See also State ex rel. Hous. Advocates, Inc. v. Cleveland,* 8th Dist. No. 96243, 2012-Ohio-1187, ¶ 6.

{¶ 47} Relator makes no effort to distinguish the applicable case law. Rather, relator submitted the affidavit of Patriot President, Andrew Blocksom, as an attachment to its brief. Therein, Blocksom avers that he instructed relator both to initiate the public records requests on behalf of Patriot, and to subsequently file the instant mandamus action on Patriot's behalf. ODNR urges us to disregard Blocksom's affidavit as being untimely filed.

{¶ 48} However, even if we consider the affidavit, Blocksom does not aver that Patriot either paid or was obligated to pay relator's attorneys for the work done in this case. Thus, the affidavit does not persuade us that Patriot is the person aggrieved in this matter. This action was commenced by relator on its own behalf and the public records requests that precipitated this matter were served by relator on its own behalf. Relator is clearly the "person aggrieved" for purposes of R.C. 149.43(C)(1).

{¶ 49} Based on the foregoing, we hold that relator is not entitled to recover attorney fees associated with its prosecution of this action. Accordingly, relator's seventh objection is overruled.

## IV. DISPOSITION

{¶ 50} Following independent review, pursuant to Civ.R. 53, we find the magistrate has properly determined many of the pertinent facts, as indicated herein, and we adopt them as our own. However, for the reasons set forth in this decision, we disagree with the magistrate's conclusion of law. Accordingly, we hereby sustain relator's first, second, third, fourth, fifth and sixth objections. Relator's seventh objection is overruled.

{¶ 51} Based upon the foregoing, we find that relator has proven, by clear and convincing evidence, that it has a clear legal right to relief under the Public Records Act, that respondent is under a clear legal duty to perform the acts necessary to promptly

prepare responsive public records and to make copies of all such records available to relator, and that relator has no plain and adequate remedy in the ordinary course of the law. Accordingly, a writ of mandamus shall be issued ordering ODNR to promptly prepare all non-exempt public records that are responsive to relator's May 17 2011, October 27, 2011, and February 3, 2012 public records requests, and to make copies of all such records available to relator within a reasonable period of time. In accordance with its duties hereunder, ODNR shall perform the acts necessary to search its journal for responsive e-mail correspondence that were deleted in violation of its records retention policy, and it shall make reasonable efforts to identify all responsive records stored on the shared servers or on the personal computers of all former ODNR employees who are either identified in relator's records requests or whom are known to have generated or received responsive records.

{¶ 52} Consistent with the Public Records Act and ODNR's Public Records Policy-Procedure, the parties are encouraged to cooperate to achieve a mutually acceptable resolution of the pending records requests. *See State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 604 (2009).

*Objections sustained in part;*
*writ of mandamus granted.*

BROWN and DORRIAN, JJ., concur.

_____

# <u>A P P E N D I X</u>

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Bott Law Group, LLC, | : | |
| | : | |
| Relator, | | |
| | : | No. 12AP-448 |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Ohio Department of<br>Natural Resources, | : | |
| | | |
| Respondent. | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on May 20, 2013

---

*Bott Law Group, LLC, April R. Bott, Sarah L. Herbert,* and *MacDonald W. Taylor,* for relator.

*Michael DeWine,* Attorney General, *Robert Moormann* and *Jeffrey Clark,* for respondent.

---

IN MANDAMUS

{¶ 53} Relator, Bott Law Group, LLC, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Ohio Department of Natural Resources ("ODNR") to provide it with all documents encompassed within the scope of their public records requests and asks this court to find that, to the extent that ODNR has already provided certain documents, ODNR did not do so promptly. Further, to the

extent that relator asserts that ODNR has not provided copies of all relevant documents, relator asks this court to order ODNR to produce those records. Relator also seeks an award of statutory damages and attorney fees.

Findings of Fact:

{¶ 54} 1. Between May 17, 2011 and March 27, 2012, relator made seven separate requests for public records to ODNR.

{¶ 55} 2. Out of those seven requests, relator argues that ODNR did not respond promptly and did not provide all relevant documents for three of those requests: May 17, October 27, 2011, and February 3, 2012. Those three requests are the subject of this mandamus action.

{¶ 56} 3. Relator's May 17, 2011 public records request was made via e-mail directed to Denise McCoy. Relator sought the following documents:

> Pursuant to Ohio's Public Records Law, R.C. 149.43, this letter serves as a public records request for all of the following Ohio Department of Natural Resources records, including all records from the Division of Mineral Resources Management and all relevant district offices, from January 1, 2009 to present:
>
> - Communications, meeting or call logs/notes, correspondence, documents, data, analyses, calculations, studies, reports, scientific, technical and supporting information, or comments related to Patriot Water Treatment, LLC's ("Patriot") pending Ohio EPA PTI permit applications for Steubenville and East Liverpool;
>
> - Total dissolved solids ("TDS") scientific, modeling and technical documents, data, calculations, studies, analyses, samples, tests, reports or records related to the Ohio River, including, specifically, such information related to portions of the river spanning Ohio River miles 942.52 to 904;
>
> - Communications and correspondence between the Ohio Department of Natural Resources and other government agencies, including but not limited to U.S. EPA, Pennsylvania Department of

Environmental Quality, and Ohio EPA and any communications, meeting and conference notes, records, logs, guidance, requirements, technical documents, calculations, recommendations or comments from such agencies regarding Ohio EPA's permitting of Patriot's pretreatment system, the receipt and discharge of brine process water by Steubenville or East Liverpool, and, more generally, brine water pretreatment systems, the discharge of brine process water by such systems to wastewater treatment plants, and the disposal of brine water;

- Scientific, modeling and technical documents, memorandum, recommendations, policy documents, and communications, including all TDS and water quality data and information regarding: (1) the Ohio Department of Natural Resources' policies and/or positions regarding brine water pretreatment systems, (2) the Ohio Department of Natural Resources' policies and/or positions regarding discharges of brine process water by wastewater treatment facilities, (3) the environmental impacts of underground injection of water and other substances created by fracking, and (4) the disposal of fracking water; and

- Communications and correspondence between the Ohio Department of Natural Resources and companies, industries or individuals involved in underground injection of brine water or fracking water or the processing and treatment of brine water or fracking water.

This public records request is meant to be comprehensive, and includes, without limitation, the files of Director David Mustine, former Director Sean Logan, Scott Zody[,] John Husted, Tom Tugend, Rick Simmers, Mike McCormac, Rob Stonerock and any other Ohio Department of Natural Resources employee who has worked on or continues to work on matters related to the pretreatment of brine process water, the discharge of such process water into wastewater treatment facilities, and any other disposal option(s) for brine water, including individuals involved in permitting and policy development of same.

Further, this public records request includes, without limitation, all other files (including electronic files), records, reports, tests, meeting notes, personal notes, telephone notes and logs, data and reports (both draft and final), internal and external memoranda and all other relevant documents responsive to the topics of this public records request.

{¶ 57} 4. The record contains an affidavit from Charles Rowan, who has served as Deputy Chief Counsel at ODNR since 1996. According to his affidavit, Rowan is responsible for providing and/or coordinating responses to public records requests made upon ODNR. According to Rowan, ODNR receives hundreds of public records requests on an annual basis. Since February 2012, ODNR has logged and responded to over 900 separate, non-routine public records requests.

{¶ 58} 5. According to Rowan's affidavit, relator's May 17, 2011 public records request was handled as follows:

[Five] On May 17, 2011, Denise McCoy received an e-mail public records request from Mac Taylor ("Mr. Taylor") of Bott Law Group, LLC ("BLG"). Denise McCoy forwarded the public records request to me via e-mail the same day, May 17, 2011. See Stipulated Ex. 1; Respondent's Ex. B, p. 62[.]

[Six] The May 17 public records request ("May 17 Request") requested records from, or to, or sent or received by, multiple employees, "relating to" multiple subject areas, and covered multiple different files. See, Stipulated Ex. 1[.]

[Seven] Much of the May 17 Request submitted by BLG was overly broad and requested an almost complete duplication of ODNR's files regarding several subject matters, several employees, and communications made between ODNR and other state, local, and federal agencies.

[Eight] Much of the May 17 Request submitted by BLG was ambiguous and did not request records with specificity or particularity.

[Nine] Despite the May 17 Request being overbroad and ambiguous, I decided to err in favor of disclosure, and immediately began to process the May 17 Request to the

fullest extent practicable given the manner in which records were maintained by ODNR.

[Ten] On May 17, 2011, the same day the May 17 Request was submitted, I notified ODNR employees of the request and directed them to forward to appropriate staff for review and response. See Respondent Ex. B, p. 64.

[Eleven] I took the following steps to process the May 17 Request: (1) sent the May 17 Request to all potential employees and offices in Central Office who had responsive records; (2) obtained and organized records that were located in several different files and provided by several employees; (3) ensured that the responsive documents identified had been reviewed prior to release.

[Twelve] On June 6, 2011, I provided BLG with a cover letter and a set of responsive records to the May 17 Request. See Stipulated Ex. 3.

[Thirteen] In the June 6, 2011, cover letter I indicated that additional records were being reviewed and would be sent once the review was complete. See Stipulated Ex. 3[.]

[Fourteen] On June 30, 2011, I provided BLG with a cover letter and a set of additional responsive records to the May 17 Request. See, Stipulated Exhibit 4.

[Fifteen] ODNR has been unable to locate an exact copy of the records provide on June 30, 2011, but a reproduction of a majority of those records is contained in Respondent's Ex. C.

[Sixteen] By June 30, 2011, ODNR had provided over 200 pages of responsive documents to the May 17 Request.

[Seventeen] Upon the provision of records on June 30, 2011, I considered the May 17 Request completed and closed.

[Eighteen] The first set of records responsive to the May 17 Request were sent to Relator within three weeks. All of the review and provision of responsive records for the May 17 Request was completed in less than six weeks, and in a reasonably comprehensive manner in light of the ambiguous and overly broad nature of the requests.

{¶ 59} 6. Relator's next public records request, dated October 27, 2011, requested the following records:

> Pursuant to Ohio's Public Records Law, R.C. 149.43, this letter serves as a public records request for all of the following Ohio Department of Natural Resources records, including all records from the Division of Mineral Resources Management and all relevant district offices, from May 1, 2011 to present:
>
> • Decisions, rulemakings, policy documents, meeting notes or logs, communications, and all other records related to the treatment of industrial waters in the oil and gas industry;
>
> • Communications, meeting or call logs/notes, correspondence, documents, data, analyses, calculations, studies, reports, scientific, technical and supporting information, or comments related to Patriot Water Treatment, LLC's ("Patriot") pending Ohio EPA PTI permit applications for Steubenville and East Liverpool;
>
> • Total dissolved solids ("TDS") scientific, modeling and technical documents, data, calculations, studies, analyses, samples, tests, reports or records related to the Ohio River, including, specifically, such information related to portions of the river spanning Ohio River miles 942.52 to 904;
>
> • Communications and correspondence between the Ohio Department of Natural Resources and other government agencies, including but not limited to U.S. EPA, Pennsylvania Department of Environmental Quality, and Ohio EPA and any communications, meeting and conference notes, records, logs, guidance, requirements, technical documents, calculations, recommendations or comments from such agencies regarding Ohio EPA's permitting of Patriot's pretreatment system, the receipt and discharge of brine process water by the City of Warren ("Warren") Steubenville or East Liverpool, and, more generally, brine water

pretreatment systems, the discharge of brine process water by such systems to wastewater treatment plants, and the disposal of brine water;

- Documents and records related to Patriot or Warren or the use of injection wells;

- Scientific, modeling and technical documents, memorandum, recommendations, policy documents, and communications, including all TDS and water quality data and information regarding: (1) the Ohio Department of Natural Resources' policies and/or positions regarding brine water pretreatment systems, (2) the Ohio Department of Natural Resources' policies and/or positions regarding discharges of brine process water by wastewater treatment facilities, (3) the environmental impacts of underground injection of water and other substances created by fracking, and (4) the disposal of fracking water; and

- Communications and correspondence between the Ohio Department of Natural Resources and companies, industries or individuals involved in underground injection of brine water or fracking water or the processing and treatment of brine water or fracking water.

This public records request is meant to be comprehensive, and includes, without limitation, the files of former Director David Mustine, Director Scott Zody, John Husted, Tom Tugend, Tom Tomastik, Rick Simmers, Mike McCormac, Rob Stonerock and any other Ohio Department of Natural Resources employee who has worked on or continues to work on matters related to the pretreatment of brine process water, the discharge of such process water into wastewater treatment facilities, and any other disposal option(s) for brine water, including individuals involved in permitting and policy development of same.

Further, this public records request includes, without limitation, all other files (including electronic files), records, reports, tests, meeting notes, personal notes, telephone notes and logs, data and reports (both draft and final), internal and

external memoranda and all other relevant documents responsive to the topics of this public records request.

{¶ 60} 7. Rowan's affidavit also explains the manner in which relator's October 27, 2011 records request was handled:

[Nineteen] On October 27, 2011, Denise McCoy received an e-mail public records request from Mr. Taylor. Denise McCoy forwarded the public records request to me via e-mail the same day, October 27, 2011. See Stipulated Ex. 5; Respondent's Ex. B, p. 102.

[Twenty] The public records request ("Oct. 27 Request") attached to the October 27, 2011, e-mail requested records from, or to, or sent or received by, multiple employees, "relating to" multiple subject areas, and covered multiple different files. See Stipulated Ex. 5.

[Twenty-one] Much of the Oct. 27 Request submitted by BLG was overly broad and requested an almost complete duplication of ODNR's files regarding several subject matters, several employees, and communications made between ODNR and other state, local and federal agencies.

[Twenty-two] Much of the Oct. 27 Request submitted by BLG was ambiguous and did not request records with specificity or particularity.

[Twenty-three] On Nov. 1, 2011, I notified Mr. Taylor of the BLG, via letter, that the Oct. 27 Request lacked clarity, was over-inclusive, overly broad, and vague. See Stipulated Ex. 6.

[Twenty-four] Mr. Taylor declined to revise the Oct. 27 request. See Stipulated Ex. 7.

[Twenty-five] Despite the problems with the Oct. 27 Request noted above, I again decided to err in favor of disclosure and immediately began to process the Oct. 27 Request to the fullest extent practicable given the manner in which records were maintained by the Department.

[Twenty-six] In order to process the Oct. 27 Request I took the following steps: (1) sent the Oct. 27 Request to all

potential employees and offices in Central Office who had responsive records; (2) obtained and organized records that were located in several different files and provided by several employees; (3) ensured that the responsive documents identified had been reviewed prior to release.

[Twenty-seven] On Nov. 1, 2011, I notified ODNR employees of the Oct. 27 Request and directed them to review and respond with all responsive records. See Respondent's Ex. 102.

[Twenty-eight] On Nov. 10, 2011, I provided BLG with a cover letter and a set of responsive records to the Oct. 27 Request. See Stipulated Ex. 9, 24.

[Twenty-nine] In the Nov. 10, 2011, cover letter I indicated that additional records were being reviewed and would be sent once the review was complete. See Stipulated Ex. 9.

[Thirty] On Nov. 23, 2011, through Ohio Attorney General Counsel, ODNR mailed additional records responsive to the Oct. 27 Request to the BLG office. See Stipulated Ex. 25.

[Thirty-one] In total, ODNR has provided over 460 pages of responsive documents to the Oct. 27 Request.

[Thirty-two] Upon the provision of records on Nov. 23, 2011, I considered the October 27 Request completed and closed.

[Thirty-three] The first set of responsive records to the October 27 Request were sent to Relator within two weeks. All of the review and provision of responsive records for the Oct. 27 Request was completed in less than one month, and in a reasonably comprehensive manner in light of the ambiguous and overly broad nature of the request.

{¶ 61} 8. Relator made two additional public records requests in January 2012 and then submitted the following public records request dated February 3, 2012:

Pursuant to Ohio's Public Records Law, R.C. 149.43, this letter serves as a public records request for all of the following Ohio Department of Natural Resources records, including all records from the Division of Oil and Gas

Resources Management, Division of Mineral Resources Management, and all relevant district offices (collectively, "ODNR"):

- All records, including any communications, correspondence (including any communications or correspondence with Ohio EPA or other Ohio state agencies), reports, data, or studies, that support ODNR spokesman Carlo LoParo's statement in the February 1, 2012 Youngstown Business Journal article entitled "Patriot Claims State Spreads Disinformation." Specifically, Mr. LoParo's statement that "[t]he salt water in the wastewater with the carcinogens have a negative cumulative effect on the [Mahoning] river, on its plant life and on its animal life."

- All records, including any communications, correspondence (including any communications or correspondence with Ohio EPA or other Ohio state agencies), reports, data, or studies, that support Mr. LoParo's claim, in the same Youngstown Business Journal article, that "negative impacts" experienced in New York and Pennsylvania with regard to the cumulative impact of the disposal of oil and gas wastewater in surface water-bodies are transferable to the Mahoning River.

This public records request is meant to be comprehensive, and includes, without limitation, the files of James Zehringer, Larry Wickstrom, Tom Tomastik, Tom Tugend, Scott Zody, John Husted, Carlo LoParo, and Rick Simmers.

Further, this public records request includes, without limitation, all other files (including electronic files), records, reports, tests, meeting notes, personal notes, telephone notes and logs, data and reports (both draft and final), internal and external memoranda and all other relevant documents responsive to the topics of this public records request.

(Footnote deleted.)

{¶ 62} 9. In his affidavit, Rowan explains the manner in which relator's February 3, 2012 public records request was handled:

[Thirty-four] On February 3, 2012, Beth Wilson received an e-mail public records request from Mr. Taylor of BLG. See Stipulated Ex. 10. The same public records request was sent to me via e-mail on February 6, 2012. See, Stipulated Ex. 11.

[Thirty-five] The public records request ("Feb. 3 Request") attached to the Feb. 3, 2011, and Feb. 6, 2011, e-mails requested records from, or to, or sent by, or received by, numerous employees, "supporting" statements made by an ODNR employee. See Stipulated Ex. 10.

[Thirty-six] Much of the Feb. 3 Request submitted by BLG was overly broad and was an improper request for information.

[Thirty-seven] Much of the Feb. 3 Request submitted by BLG was ambiguous and did not request records with specificity or particularity, or in the manner in which records were stored at ODNR.

[Thirty-eight] Despite the problems with the Feb. 3 Request noted above, I again decided to err in favor of disclosure and immediately began processing the Feb. 3 Request to the fullest extent practicable given the manner in which records were maintained by the Department.

[Thirty-nine] In order to process the Feb. 3 request I took the following steps: (1) sent the Feb. 3 Request to all potential employees and offices in Central Office who had responsive records; (2) obtained and organized records that were located in several different files and provided by several employees; (3) ensured that the responsive documents identified had been reviewed prior to release; (4) utilized ODNR's information technology resources to perform searches in regards to employee e-mail. See Respondent's Ex. B, p. 178.

[Forty] On Feb. 6, 2012, I notified ODNR employees of the Feb. 3 Request and directed them to review and respond with all responsive records. See Respondent's Ex. B, p. 162.

[Forty-one] On March 5, 2011, I provided BLG with a cover letter and a set of responsive records to the Feb. 3 Request. See Stipulated Exhibit 15; See Respondent's Ex. D.

> [Forty-two] In total, ODNR has provided over 35 pages of responsive documents to the Feb. 3 Request.
>
> [Forty-three] All of the above review and provision of responsive records for the Feb. 3 Request was completed in just over four weeks, and in a reasonably comprehensive manner in light of the ambiguous and overly broad nature of the requests.

{¶ 63} 10. As part of contemporaneous litigation by relator, John Husted, an ODNR employee, was deposed on April 10, 2012. At that deposition, Husted produced an e-mail record which relator asserts should have been provided as part of ODNR's response to relator's May 17, 2011 public records request.

{¶ 64} 11. The Husted e-mail is dated Tuesday, July 21, 2009. The July 21, 2009 e-mail is the fourth e-mail in a string of e-mails which were sent and forwarded to various people beginning with the July 15, 2009 e-mail sent from Cathryn Loucas to John Husted and Scott Kell. The subject of the e-mails was referred to as: "Patriot Water (Is that their name)." The original e-mail from Loucas to Husted and Kell provides:

> You guys may recall we got an e-mail from Jen Lynch regarding Patriot Water. I talked to George Elmaraghy today and he is going to forward the letter that OEPA sent to Patriot with guidelines regarding what waters can be treated at POTW. In the meantime and in anticipation of our proposed O&G legislation and the probability that we will be asked to take water/brine from WV and PA, we need to examine our legislation to make sure we are adequately protected or we are taking responsible, proactive steps to handle these issues should/when it occurs. Let me know how you guys would like to proceed.

{¶ 65} 12. In a follow-up e-mail dated July 16, 2009, Husted responded as follows to Loucas and Kell:

> This issue was in last week's weekly... just as an fyi.
>
> I would some [sic] type of briefing that summarizes:
>
> [One] Number permits by company and state

[Two] Years in operation
[Three] Volume by permit by yr
[Four] Comparison to Ohio companies.

Scott please assign this summary to Tom T to be completed by 7-25-09[.]

I believe we can get a better handle on the issue for CL's questions with a little more info.

{¶ 66} 13. Thereafter, on July 20, 2009, Kell responded as follows to Husted and copied Tom Tomastik with the following e-mail:

This is a new company, proposing to manage brine in a manner that has been approved by the PA. DEP for decades, but never in Ohio. Their proposal would be permitted and regulated by OEPA. We would not have approval, inspection or enforcement authority. Based on personal communications, their proposal involves treatment and stream release of relatively low salinity brine (<50,000 ppm chloride), mostly flow back from Marcellus hydraulic fracturing operations. Our law prohibits direct release to streams and will continue to allow two options for brine management; disposal at a permitted Class II injection well, or surface spreading for dust and ice control in accordance with an approved local ordinance. These will remain the only options for brine management that we authorize and regulate, other than releases from a small group of wells in SE Ohio called Exempt Mississippian wells. Our amendments prohibit surface spreading of flowback, establish a per-barrel injection fee, and allows modifications to permitted injection pressures based upon the results of an authorized and witnessed step-rate test.

{¶ 67} 14. The final e-mail in the string of e-mails is the one dated July 21, 2009 from Husted to Loucas, which provides: "fyi."

{¶ 68} 15. Following the deposition at which Husted produced the July 21, 2009 e-mail, relator sent the following April 10, 2012 e-mail to Megan DeLisi with ODNR:

As follow-up from the Husted depositions, a couple of items.

First, as to the attached e-mail, we have confirmed that we have not received this e-mail with all appropriate e-mail

changes (i.e. dates, transmittals, cc list). Mr. Husted testified that if he printed his e-mail off, it would have included this information. Note, that ODNR employees Tugend, Simmers and Tomastik are also carbon copies, so all of these employees should have the same capability to provide a full copy of the e-mail. Please provided by COB tomorrow.

Second, we confirmed that the e-mail you provided today has not been previously provided despite the numerous public records requests served on ODNR. As such, we would request that you immediately confirm the all responsive documents from Husted, Kell and Loucas's [sic] files have been identified and will be produced to us immediately.

Thanks in advance for your anticipated cooperation.

{¶ 69} 16. In an e-mail dated April 16, 2012, Rowan responded to relator as follows:

Please be advised that the department is currently evaluating its previous public record response for completeness in light of your e-mail to Ms. DeLisi below and will endeavor to have any additional responsive records to you as soon as our resources allow. Your patience is greatly appreciated.

{¶ 70} 17. Thereafter, on April 17, 2012, relator sent the following e-mail to Rowan and copied Megan DeLisi, Sandra Ramos, Beth Wilson, and Molly Corey:

Charles-

As you know, this request was made a week ago following a deposition during which Mr. Husted produced an e-mail not previously produced. As you as [sic] also aware, my clients have a hearing in one week from today and these Loucas/Kell/Husted documents are all directly relevant. As such, I would ask that ODNR timely turn over all additional records responsive to our numerous public records request. As you know, Ohio case law states that "timely production" occurs in 7-10 business days from request.

Thank you in advance for your cooperation.

{¶ 71} 18. That same day, April 17, 2012, Rowan responded to relator:

Timely production is not limited to 7-10 business days. The time frame is determined on a case by case basis considering what is reasonable based upon the extent and nature of the request and the resources available to the public office. In addition, the agency has a right to pre-release review. Also, I am not aware of your clients hearing schedule, nor is that a factor in evaluating whether the department's response is timely.

With regard to the specific records you requested, John Husted's 2009 e-mail is beyond the department's record retention schedule for e-mail correspondence (2 years), and we have been unable to isolate the e-mails from Tomastik, Tugend, Simmers. Accordingly, we will continue reviewing our e-mail files for those gentlemen as well as Husted, Kell, and Loucas.

If I can be of further assistance with this request, please feel free to contact me.  Thanks [sic] you.

{¶ 72} 19.  On April 18, 2012, Bott sent the following e-mail to Rowan:

Mr. Rowan-

While our e-mails below demonstrate our intent to work cooperatively with ODNR towards the production of records, your response does not indicate a similar spirit. As such, we now believe, given the position that you have chosen to take, we must preserve the record as we anticipate a Mandamus Action filing will be necessary shortly. To that end, please keep in mind the following information as you determine whether or not to produce public records:

- At Mr. Husted's April 10, 2012 deposition, he pulled out a 2009 e-mail that had never been produced to us. He also testified that the e-mail came from his ODNR computer. In response, I asked Ms[.] DeLisi, below, to produce all documents that have yet to be produced. This is <u>not</u> a new request. Rather, these documents should have been turned over in response to three public records requests dated May 17, 2011, October 27, 2011 and February 3, 2012. It is quite disappointing first that you would have a witness show up to a deposition with a document that has

never been produced and even more disappointing that you chose to take such a relaxed attitude about a public agency's responsibility under Ohio public records law.

- As to timing, while you seem to believe that "prompt" production does not mean 7-10 days, we have not found a single court who has determined that 11 months, 6 months and 2 months (length of our pending requests) is timely or prompt under similar circumstances. See, State v. Cleveland (24 days is not prompt). Regarding your rights to a pre-release review, that point is irrelevant to your statutory duties as a public agency. Certainly a court would likely view 11 months as ample time for your pre-release review.

- Moving to ODNR's records retention policy, three points are relevant. First, we have had a records request pending since May 2011; thus, you have been on notice not to destroy records for almost a year. Second, at least since May 2011, with the Nally letter to Mustine, ODNR has been on notice of pre-litigation based on post-permit policy shifts, a fact you personally know based on a meeting in June 2011. Thus, ODNR had and has a legal duty to place a litigation hold on all relevant records. As such, we would be shocked to learn that such records have been destroyed despite your full knowledge that litigation was imminent and your agency had relevant records/evidence. Third, Mr. Husted was able to pull up and print a 2009 e-mail. As such, it is obvious that ODNR maintains 2009 records—despite your agency's policy, if the records exist, they must be produced.

- Finally, while you state that you are "unaware" of the Patriot/Warren hearing schedule and that it has no relevance, we certainly disagree with both points. First, your AGs, who are copied on your e-mail, filed a request just last week in the same case on ODNR's behalf to file an amicus brief. Obviously, based on this filing, your agency is well aware of the hearing. More fundamentally, your lawyers also have stated to the Commission that they intend to file an amicus brief explaining ODNR's "position" on approval in 2009.

> We are struck by the irony—ODNR is going to articulate, three years later, a position in a legal filing with a court but at the same time claim that no public records to support its position exist as they have been destroyed per ODNR's public records retention policy. Based on your e-mail below, we intend to make ERAC aware of this inconsistency that prejudices our clients' rights.
>
> We do hope that you will reconsider your position and produce all relevant records without delay by, at latest, close of business tomorrow, April 19, 2012. If not we intend to move forward swiftly with a Mandamus Action and will seek fees based on ONDR's [sic] unreasonableness.
>
> As a final note, I am personally disappointed with this turn of events. As you know, I have worked with ODNR for more than 15 years under different administrations on all types of issues primarily with DMRM. During that time, I have always found ODNR to be a fair, reasonable and professional agency. Despite differing legal positions, I have always had respect for your team and have worked well with your lawyers on a number of important matters. I do hope we can resolve this issue without the need for any more formal process. I am asking that you be fair to my clients Warren and Patriot and follow the law with respect to your production requirements.
>
> Thank you in advance for your anticipated cooperation.

(Emphasis sic.)

{¶ 73} 20. According to Rowan's affidavit, he took the following steps to re-evaluate ODNR's response to relator's public records requests:

> [Forty-six] In order to re-evaluate ODNR's public records responses to the May 17, October 27, and Feb. 3 public records requests, I took the following steps: (1) utilized ODNR IT resources to perform extraordinary searches in regard to employee e-mails; (2) asked employees to look again for responsive records and verified that everyone identified provided records or did not have records. See Respondent's Ex. B, pp. 226-333.

[Forty-seven] On April 19, 2012, after taking the steps outlined in paragraph 46, I provided the BLG with records and a corresponding cover letter in response to its "April 10 E-mail Follow-up Public Record Request." See Stipulated Ex. 19; Respondent's Ex. E.

[Forty-eight] Respondent's Ex. E contains 534 e-mails with over 300 corresponding attachments, totaling over 7,000 pages.

[Forty-nine] To the best of my knowledge and effort all documents responsive to BLG's May 17, October 27, and Feb. 3 public records requests were identified or provided to the BLG at the time of the original responses. It was only after BLG alleged that ODNR had not provided a particular e-mail document that I became aware of its existence. After discussing the manner in which this e-mail was produced with the author, it was my understanding that only the author could have identified and retrieved it. See, Respondent's Ex. B, p. 308. Nevertheless, ODNR undertook the additional measures outlined above to satisfy BLG's demand that ODNR "immediately confirm the [sic] all responsive documents from Husted, Kell & Loucas's [sic] files have been identified and will be produced to us immediately." See Respondent's Ex. B, p. 231. To ensure that no stone was left unturned, we deliberately broadened the scope of the e-mail searches executed by ODNR IT. And, my concomitant review and evaluation of the responsiveness of those e-mails was similarly liberalized, again, to err in favor of disclosure. See Respondent's Ex. B, pgs. 233-234.

{¶ 74} 21. Two additional e-mails were ultimately identified. The first is a July 7, 2009 e-mail sent from Husted to Kell and Tomastik. That e-mail forwarded to Kell and Tomastik an e-mail dated July 6, 2009 originally sent from Jennifer Lynch to Husted, Loucas, and Rich Milleson. Attached to that e-mail was a July 6, 2009 letter from Chris Korleski of the Ohio Environmental Protection Agency ("EPA") to Michael Mearini with the city of Ashtabula. According to the e-mail, Patriot Water had already been notified of the substance of the July 6, 2009 letter.

{¶ 75} 22. The second e-mail is dated December 5, 2010 and was sent from Mike Shelton to Husted, Tugend, and Milleson. Attached to that e-mail was a copy of a press release dated December 3, 2010.

{¶ 76} 23. Thereafter, on May 25, 2012, relator filed this complaint for a writ of mandamus asserting that ODNR failed to promptly provide records relative to relator's May 17 and October 27, 2011, and the February 3, 2012 public records requests because ODNR released additional records many months after the original public records requests were made. Relator asserts that it is a party aggrieved by ODNR's failure to promptly prepare the public records and asks this court to award costs and reasonable attorney fees.

Conclusions of Law:

{¶ 77} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 78} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle,* 6 Ohio St.3d 28 (1983).

{¶ 79} The purpose of the Ohio Public Records Act "is to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy." *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro,* 80 Ohio St.3d 261, 264 (1997), citing *State ex rel. WHIO—TV—7 v. Lowe,* 77 Ohio St.3d 350, 355 (1997). Scrutiny of public records allows citizens to evaluate the rationale behind government decisions so government officials can be held accountable. *White v. Clinton Cty. Bd. of Commrs.,* 76 Ohio St.3d 416, 420 (1996).

{¶ 80} The appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act, is mandamus. *State ex rel. Physicians Commt. For Responsible Medicine v. Bd. of Trustees of Ohio St. Univ.,* 108 Ohio St.3d 288, 2006-Ohio-903. R.C. 149.43 must also be construed liberally in favor of broad access, and any doubt must be

resolved in favor of disclosure of public records. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.,* 75 Ohio St.3d 374 (1996).

{¶ 81} R.C. 149.43 pertains to availability of public records and provides, in pertinent part:

> (A)(1) "Public record" means records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units * * *.
>
> * * *
>
> (B)(1) Upon request and subject to division (B)(8) of this section, all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. Subject to division (B)(8) of this section, upon request, a public office or person responsible for public records shall make copies of the requested public record available at cost and within a reasonable period of time. If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt. When making that public record available for public inspection or copying that public record, the public office or the person responsible for the public record shall notify the requester of any redaction or make the redaction plainly visible. A redaction shall be deemed a denial of a request to inspect or copy the redacted information, except if federal or state law authorizes or requires a public office to make the redaction.
>
> (2) * * * If a requester makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records under this section such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, the public office or the person responsible for the requested public record may deny the request but shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office

and accessed in the ordinary course of the public office's or person's duties.

(3) If a request is ultimately denied, in part or in whole, the public office or the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied. If the initial request was provided in writing, the explanation also shall be provided to the requester in writing.

(C)(1) If a person allegedly is aggrieved by the failure of a public office or the person responsible for public records to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section or by any other failure of a public office or the person responsible for public records to comply with an obligation in accordance with division (B) of this section, the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section, that awards court costs and reasonable attorney's fees to the person that instituted the mandamus action, and, if applicable, that includes an order fixing statutory damages under division (C)(1) of this section.

If a requestor transmits a written request by hand delivery or certified mail to inspect or receive copies of any public record in a manner that fairly describes the public record or class of public records to the public office or person responsible for the requested public records, except as otherwise provided in this section, the requestor shall be entitled to recover the amount of statutory damages set forth in this division if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with division (B) of this section.

The amount of statutory damages shall be fixed at one hundred dollars for each business day during which the public office or person responsible for the requested public records failed to comply with an obligation in accordance with division (B) of this section, beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand

dollars. The award of statutory damages shall not be construed as a penalty, but as compensation for injury arising from lost use of the requested information.

{¶ 82} As above indicated, public offices are required to promptly prepare records and transmit them within a reasonable period of time after receiving the request for the copy. The term "promptly" is not defined in the statute. However, statutes in other states give their agencies from between 3 and 12 days from the date the public records were requested to make the documents available. The word "prompt" is defined as "performed readily or immediately." *Webster's Eleventh New Collegiate Dictionary* 994 (2005).

{¶ 83} ODNR has provided relator with copies of documents related to relator's multiple public records requests.  According to Rowan's affidavit, when initially responding to relator's public records requests, ODNR staff took steps to locate all documents responsive to relator's requests.  Although relator appears to contend that ODNR is still in possession of documents which are responsive to relator's public records requests and which ODNR should provide, there is no evidence in the record to indicate that relator is correct.  As such, to the extent that relator's mandamus action seeks to compel ODNR to produce those documents, the matter is moot.  *See State ex rel. Cranford v. Cleveland,* 103 Ohio St.3d 196, 2004-Ohio-4884, ¶ 23, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis, 98 Ohio St.3d 126, 2002-Ohio-7041.* " 'In general, the provision of requested records to a relator in a public-records mandamus case renders the mandamus claim moot.' " *Id.*

{¶ 84} However, R.C. 149.439(C)(1) provides that an award of statutory damages, can be awarded even if the documents have been provided. In this mandamus complaint, relator specifically seeks an award of statutory damages. This determination is not rendered moot simply because ODNR has now provided relator with the documents he requested.

{¶ 85} With regard to relator's request for statutory damages, relator has the burden to demonstrate that ODNR's response to its public records requests was unreasonably delayed. *State ex rel. Dispatch Printing Co. v. Johnson,* 106 Ohio St.3d 160, 2005–Ohio–4384. Further, a review of R.C. 149.43(B)(1) reveals that the state of Ohio has

not set a required time period for a public office to respond to a request for copies of public records. The only requirement is that the copy be made available in a reasonable period of time.

{¶ 86} As indicated in the findings of fact, Rowan received relator's May 17, 2011 request on May 17, 2011. At that time, Rowan notified ODNR employees and directed them to forward the request to appropriate staff for review and response. Three weeks later, on June 6, 2011, Rowan provided relator with documents which were responsive to the request and indicated that staff was still searching for additional documents. On June 30, 2011, Rowan provided relator with additional documents.

{¶ 87} According to Rowan's affidavit, Denise McCoy received relator's October 27, 2011 e-mail public records request on October 27, 2011 and she forwarded it to Rowan. In a letter dated November 1, 2011, Rowan advised relator as follows:

> With respect to your bulleted requests, please be advised they lack clarity, are over inclusive, and require what would be a complete duplication of ODNR's files relative to specifically identified names and topics. In addition, these items request records that are not kept or maintained by the department. Although a public office may deny a request that is overly broad and vague, ODNR will endeavor to identify any records that are responsive to your request as submitted based upon the manner in which department records are currently organized. See, State ex rel. Dillery v. Icsman, 92 Ohio St.3d 312, 2001-Ohio-193; State ex rel. Glascow v. Jones, 119 Ohio St.3d 391, 2008-Ohio-2788.

> Relator responded in an e-mail dated November 8, 2011:

> I am writing to follow-up on the public records request I made to ODNR on October 27, 2011 and your letter responding to my request of November 1, 2011. While I disagree with your characterization of the requests as unclear, over-inclusive, and requiring complete duplication, I appreciate ODNR's willingness to identify responsive records. I also note that my request was limited in time to May 1, 2011 to the present, and additionally I ask that you please identify any aspect of my request that you feel lacks clarity, so that I can assist you in clarifying it. Do you have an estimate on when I might receive a response to the requests

made? Please let me know if you have any additional questions.

{¶ 88} On November 10, 2011, two weeks after the October 27, 2011 request, Rowan sent the first set of records to relator. On November 23, 2011, additional documents were mailed to relator.

{¶ 89} Relator's February 3, 2012 public records request was received by Beth Wilson who forwarded the request to Rowan on February 6, 2012. On March 5, 2012, ODNR provided relator with documents responsive to the February 3, 2012 request.

{¶ 90} ODNR responded to relator's request in three weeks, two weeks, and four weeks time periods. After reviewing the public records requests and after considering the affidavits in the record, the magistrate finds that relator has not met its burden of proving that ODNR did not respond promptly. To the extent that relator asks this court to consider ODNR's most recent submission of documents as the time-frame in which to evaluate the promptness of ODNR's response, the magistrate does not believe that is warranted or proper. Given the volume of public records requests received by ODNR, as well as the complexity and expansive nature of relator's requests for documents, the magistrate finds that ODNR responded promptly and finds that, after being informed that certain documents had not been provided, ODNR took steps in order to ensure that relator was provided with each and every document responsive to relator's public records requests. Finding that relator has not demonstrated that ODNR did not respond promptly, the magistrate finds that an award of statutory damages and attorneys fees is unwarranted.

{¶ 91} Relator also argues that ODNR was required to help relator narrow the search for records. Relator believes that R.C. 149.43(B)(2)'s requirement that the public office must "provide the requestor with an opportunity to revise the request by informing the requestor of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties" places a duty on ODNR to inform relator that the request was ambiguous or overly broad and to help relator modify the request.

{¶ 92} First, Rowan did inform relator that the October 27, 2011 public records request was overly broad; however, relator disagreed. Specifically, relator noted further that the request was limited to a specific period of time and asked Rowan to explain what needed clarifying. Thereafter, Rowan saw to it that the proper people were apprised of relator's request. Those people took the steps necessary to retrieve relevant records and those records were made available to relator.

{¶ 93} Relator spends a considerable amount of time in its brief focusing on the issue of whether or not its public records request was ambiguous and overly broad. Specifically, as relator indicates, pursuant to R.C. 149.43(B)(2), a public office may deny a public records request if it is ambiguous, overly broad, or if the records requested are not reasonably identifiable. Relator asserts that ODNR had a duty to explain the manner in which the request was ambiguous or overly broad. Relator asked Rowan to identify that portion of the request that lacked clarity and asserts that Rowan did not.

{¶ 94} Here, although Rowan informed relator that the request was ambiguous and overly broad, Rowan did not deny the request on those or any other grounds. Instead, Rowan saw to it that records were accessed and provided.

{¶ 95} Relator's argument that these three public records requests were not ambiguous or overly broad and ODNR's assertions that these three requests were ambiguous and overly broad are only material where a public office does not provide records in a timely manner. As noted earlier in this decision, the magistrate has determined that ODNR did respond timely to these three public records requests. Relator's real argument is that ODNR failed to provide three e-mails which were responsive to relator's request. As noted previously, the July 7, 2009 e-mail contained a letter dated July 6, 2009 from the EPA to the city of Ashtabula. Further, pursuant to that e-mail, one of relator's clients, Patriot Water, on whose behalf relator asserts it sought these documents in the first place, had already been notified of the substance of the letter. Further, the December 5, 2010 e-mail contained an attachment of a December 3, 2010 news release. Relator has never asserted that it had not been provided with a copy of this

news release or that it never saw the news release.  So, two of the three e-mails appear to contain information that relator would have already had.

{¶ 96} The third e-mail, dated July 21, 2009, discusses a letter that the EPA sent to Patriot Water with guidelines regarding what waters can be treated, references proposed legislation and indicates that Patriot Water was a new company that was proposing to manage brine in a manner that has never been approved in Ohio and which would be regulated by the Ohio EPA.  Nothing in this e-mail appears to be new information of which relator's clients would not already be aware.  It is one e-mail among hundreds which were turned over to relator.  Because the magistrate has already found that ODNR responded promptly, there is no reason to determine whether or not relator's request were ambiguous or overbroad.  Based upon the affidavits, ODNR has provided relator with all the documents related to the public records requests and there is nothing that a writ of mandamus could compel here.

{¶ 97} Finding that ODNR responded promptly to relator's public records requests, relator is not entitled to a writ of mandamus.  Further, relator has not demonstrated that it is entitled to an award of statutory damages or attorney fees.  As such, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

/s/ *Stephanie Bisca Brooks*
STEPHANIE BISCA BROOKS
MAGISTRATE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).